No. 20,917.

E. R. WALLINGFORD et al., Partners as WALLINGFORD BROTHERS, *Appellants*, v. J. D. McCRAY, *Appellee*.

### SYLLABUS BY THE COURT.

1. SALE OF WHEAT—*Contract by Telephone and Letter—Repudiation of Contract—Rescission*. Where a contract is made by telephone for the sale of wheat, to be shipped within three weeks, and the buyer at once sends the seller a letter of confirmation in which it is stated that shipment is to be made in one week, and thereafter a controversy arises between the parties in which the buyer insists that the confirmation as written is correct, and disclaims any obligation to pay the agreed price on any other terms, his conduct amounts to such a repudiation of the contract as justifies the seller in calling off the deal.

2. SAME. In that situation the buyer can not afterwards reinstate the deal by undertaking to hold the seller to the contract as it was originally made.

3. TRIAL—*Instructions—No Error*. The trial court held not to have committed error in the giving or refusing of instructions.

4. TRIAL—*Special Findings*. The special findings held not to show passion or prejudice, or to be inconsistent with the evidence or with each other.

5. TRIAL—*Taxing Costs of Witnesses from Another County*. When an order taxing costs on account of witnesses from another county is made in the absence of a party affected, his remedy, if aggrieved, is by a motion to retax.

Appeal from Finney district court; GEORGE J. DOWNER, judge. Opinion filed June 9, 1917. Affirmed.

*J. Graham Campbell*, and *Ray Campbell*, both of Wichita, for the appellants.

*William Easton Hutchison*, and *C. E. Vance*, both of Garden City, for the appellee.

The opinion of the court was delivered by

MASON, J.: On Monday, June 29, 1914, a representative of Wallingford Brothers, grain merchants of Wichita, talked by

Wallingford Bros. v. McCray.

telephone with the manager of an elevator at Attica, owned by J. D. McCray, with reference to the purchase from him of eight thousand bushels of wheat. On the same day the firm mailed to him a letter purporting to confirm a purchase of the wheat on terms which were specifically stated, and which included "this week shipment." On the next day the manager of the elevator, on receipt of this letter, called up the firm on the telephone and told them that the contract was for shipment of the wheat in the first half of July. The firm at once (June 30) wrote him another letter in which they insisted that in the first conversation they had refused to pay more than the regular export bid for the first half of July, and that the offer they had made was for "this week shipment." In an answer written on the next day (July 1) the manager said that in the conversation about the wheat deal he had refused to make it "this week shipment" but had said he would ship it as fast as he could after June shipments were over. The wheat was never shipped. On September 24, 1914, the firm sued McCray for damages resulting from his failure to ship it, alleging the making and breach of a contract for shipment "as fast as possible after June shipments were over." The plaintiffs appeal from a judgment in favor of defendant.

The controversy is almost entirely one of fact, and turns upon the effect of the telephone conversations referred to, and upon whether a later conversation was had. According to the plaintiffs' evidence the conversation on June 29 resulted in an agreement for the purchase of the wheat, to be shipped that week; in the conversation of June 30 the defendant's manager said that the contract was for shipment as soon as his June contracts were filled; this conversation was confirmed by the plaintiffs in writing; and on July 2, after receiving the manager's letter of the day before, the plaintiffs had a further conversation with the defendant's manager in which they told him they would let the matter stand as per his letter of the 1st, in which he said "I will ship as fast as I can after June shipments are over."

According to the defendant's evidence the conversation of June 29 resulted in a contract for the purchase of the wheat, the defendant to have until the middle of July to make delivery, although his manager said he would get it out as fast as he

could; in the conversation of June 30 the defendant's manager stated that the contract allowed until July 15 for delivery and he expected the confirmation to be made accordingly, and that unless this was agreed to the deal was off, but that the plaintiffs did not consent to take the wheat on these terms; the conversation testified to by the plaintiffs' witness as having been had on July 2 never took place; the defendant's manager never said he would make a contract for delivery as soon as possible; and the plaintiffs never after the conversation on June 29 consented to accept the wheat unless it should be shipped within the week; after July 1 no further communication was had between the parties until July 7 or 8, when an agent of the plaintiffs called on the defendant's manager, who told him that because of the plaintiffs' attitude there was no contract in existence; this was the first notice the defendant had that plaintiffs were expecting the wheat.

The verdict and findings of the jury showed a complete acceptance of the defendant's version of the transaction, and a complete rejection of the plaintiffs'. Accepting the facts to be as claimed by the defendant, no ground for recovery by the plaintiffs existed. The contract having been made for shipment during the first half of July, the confirmation sent calling for a shipment by July 4, coupled with the insistence of the plaintiffs upon that date, and their virtual denial of liability if shipment were made later, amounted to a refusal to abide by the agreement as it had been entered into, and justified the defendant in regarding the deal as at an end. "Where one party repudiates in advance his obligations under the contract and refuses to be longer bound thereby, communicating such repudiation to the other party, the latter party is excused from further performance." (6 R. C. L. 1012.) "Upon election to treat the renunciation of the contract by the other party, whether by declaration or by acts and conduct, as a breach of the contract, the rights of the parties are to be regarded as then culminating, and the contractual relation ceases to exist except for the purpose of maintaining an action for the recovery of damages." (6 R. C. L. 1026.)

2. Although one of the plaintiffs testified that the conversation of June 30, in which the defendant's manager was said to have spoken of the contract as one for shipment as soon as his

June contracts were filled, was confirmed by them in writing, their letter of that date shows an insistence on shipment within the week, and the first letter of a different effect was dated July 21. The plaintiffs having stood upon the proposition that the agreed price was effective only if shipment were made within a week, could not, after that period had expired and the bargain was seen to be a good one even upon the defendant's interpretation of it, shift their ground and demand a performance of the contract on that basis. The defendant's manager referred in his testimony to the failure of the plaintiffs to give any extension of the time of shipment. This language might seem to suggest an admission on his part that the contract had originally been made for delivery within a week, but the record as a whole makes it clear that by an "extension" he meant an admission by the plaintiffs that the period named in the confirmation did not control. He used that term having in mind a change of the confirmation.

3. The court gave an instruction in these words:

"If you find from the evidence that the conversation over the telephone on June 29th, is as claimed by defendant, and that on June 30th, 1914, defendant received a confirmation, through the mails, from the plaintiffs for the purchase of the 8000 bushels of wheat in question, and that on June 30th, he called plaintiffs over the telephone stating to them that the confirmation received was not in accordance with their conversation over the telephone on June 29th, and that on the same date he wrote the plaintiffs, advising them of the fact, and that at no subsequent date did the plaintiffs and defendant agree upon a date of delivery of the 8000 bushels of wheat in question, then I instruct you that the minds of the parties did not meet, and that no contract of purchase between buyer and seller was entered into, and you should return a verdict for defendant."

This instruction is criticised on the ground that if the parties reached an agreement in the telephone conversation, no subsequent dispute as to its terms could alter the fact that their minds had met and that a contract had resulted. The criticisim is chiefly verbal. If the conversation on June 29 is as claimed by the defendant, a contract was made for delivery by July 15. The plaintiffs having refused to abide by that contract must recover, if at all, by virtue of a subsequent agreement, and unless such an agreement were made there was no meeting of the minds of the parties, and no contract for the sale of the wheat, so far as concerns any recovery by

the plaintiffs. A further criticism of the instruction is that it makes the verdict turn upon whether there was a subsequent agreement upon a date of "delivery," whereas the controversy relates to the date of "shipment." It is of course true, as the plaintiffs suggest, that there is a difference between the date of shipment and the date of delivery, and in some circumstances the distinction might be very important. But here there was no room for any misapprehension by the jury as to what was intended. Objection is made to an instruction that an acceptance by the plaintiffs of the proposition of the defendant with reference to the time of shipment must have been within a reasonable time to be effective. We regard the instruction as correct and pertinent. If the plaintiffs had signified their willingness to go ahead with the contract according to the terms proposed by the defendant in the conversation of June 30, this would have amounted to a valid acceptance if done within a reasonable time, say on July 2, but not if done after an unreasonable delay, say on July 21. Instructions were asked by the plaintiffs to the effect that if the contract made on June 29 called for a shipment as soon as possible, without a definite limit being fixed, the plaintiffs had a right to wait until a reasonable time had elapsed or until the defendant notified them that no shipment would be made. We think the rights of the plaintiffs in this respect were sufficiently protected by the instructions given. Moreover it is quite evident that the jury did not accept the theory on which the rejected instructions were contingent.

4. The plaintiffs contend that the special findings show passion and prejudice and an inconsistency with the evidence and with each other. We do not regard the contention as well founded. The jury were asked whether on June 29 a deal was made whereby the wheat was sold, all the terms of the contract being fully agreed upon except the date of shipment. They answered in the negative, and the answer is justifiable on the ground that all the terms were agreed upon without exception. They were asked whether the defendant's manager wrote on July 1 that he had sold the wheat for shipment as fast as he could after his June shipments were over. They answered in the negative, and we think they were right. As already mentioned, the manager wrote that he

Wallingford Bros. v. McCray.

had said he would ship as fast as he could, but this was not necessarily inconsistent with his claim that under the contract he was to have until July 15 to make the shipment. The next question, with the answer, reads as follows:

"If you answer the foregoing question in the affirmative, state whether or not plaintiffs, upon receipt of such letter from defendant took any exceptions thereto, or objected to the time of shipment of such wheat as stated by defendant in said letter? A. Yes."

As the preceding question had not been answered in the affirmative the jury were not required to answer this one at all, but what they obviously meant was that the plaintiffs did take exceptions to the letter which was written by the defendant on July 1. This is manifest from the fact that in response to the next question they said that the plaintiffs did not advise the defendant by telephone on July 2 that they would let the time of shipment stand according to the letter to them of the day before. The jury returned a negative answer to the question whether the defendant ever notified the plaintiffs that he would not ship the wheat at all, plainly meaning that his refusal to ship the wheat was not absolute, but contingent on the plaintiffs' insistence that shipment should be made by July 4. An affirmative answer was returned to the question whether by August 24 was a reasonable time within which the defendant might have shipped the wheat. The meaning of this finding or its bearing upon the controversy is not apparent, but it affords no ground for disturbing the judgment.

5. The plaintiffs were taxed with costs on account of two witnesses from other counties, a proceeding allowed when the court so orders. (Civ. Code, § 326, Gen. Stat. 1915, § 7228.) The plaintiffs complain of the making of this order in their absence, and without notice to them. If error was committed in this regard their remedy was by a motion to retax. (*Linton v. Housh,* 4 Kan. 535.)

The judgment is affirmed.