## SANBORN et al. v. CUNNINGHAM et al.

### No. 14,994; August 15, 1893.

#### 33 Pac. 894.

**Partnership—Purchases by Partner.—Plaintiffs, Having Taken a Crop of Barley** under a mortgage of $1,045, accepted the offer of C., one of defendants' firm, to take the crop, and pay them $750 the following week. Soon after, plaintiffs received a check for $500, drawn in favor of, and indorsed by, defendants. In a suit for the balance of the $750, one of the plaintiffs testified that he told his partner to ship the barley to defendants; but it appeared that the warehouseman billed it to C., as he often did shipments from plaintiffs to defendants. Plaintiffs had charged defendants the $750, and it appeared that the $500 was the firm's money, and was charged to C. on their books. Defendants asserted that it was C.'s personal affair, and that he had bought the crop from the grower, who had directed him to pay plaintiffs the $750 to release it. Held, that there was enough evidence to support a verdict against defendants for goods sold and delivered.

**Partnership.—Plaintiff's Testimony That, in Answer to His Inquiry** at the bank for a check which he wished to use as evidence, the cashier told him that he did not think plaintiff could get it, was competent, and there was no need to call the cashier to prove that fact.

**Partnership.—Defendants Insisting That the Transaction was the Personal affair** of one partner, a question by plaintiffs whether such transaction was in defendants' general line of business was proper.

**Sale—Evidence.—In an Action for an Agreed Price,** evidence of the value of the goods is irrelevant.

**Chattel Mortgage.—Misnomer of the Mortgagor of Chattels** (E. H. Wheeler for E. H. Walker) in the body of the affidavit is immaterial, where the mortgage purports to be made, and is signed, by E. H. Walker, as is the affidavit.[1]

**Evidence—Letters—Proof of Mailing.—Plaintiff** testified that he had written certain letters to defendants; that the postage was prepaid and the letters put in the mail box at his store; that said box was emptied daily; that it was the business of W., an employee, to take the letters, and mail them in the postoffice. W. testified that he was such employee at the time in question; that it was his duty to take the mail to the office, and that he did so; that if any letter

---

[1] Cited in the note in 137 Am. St. Rep. 482, on the effect of failure to execute and record a chattel mortgage as prescribed by statute.

was addressed and put in the box, he took and mailed it. Held, sufficient proof of mailing to support secondary evidence of the contents of the letters.

**Evidence.—An Entry in Plaintiff's Ledger, Which** the bookkeeper swears to be an original entry, if competent for nothing else, yet may be admitted to show with whom plaintiffs understood that they had dealt, and to whom they looked for payment.

**Jury—Argument in Presence of.**—It is within the court's discretion to allow the presence of the jury while counsel, in the course of argument, reads from the books.

**Judgment—Overlooking Death of One Plaintiff.**—Under Code of Civil Procedure, section 475, providing that no judgment shall be reversed or affected by reason of errors and defects not going to the substantial rights, a verdict and judgment in the name of the original plaintiffs, partners, overlooking the death of one of these, and the substitution of his executors, may be corrected, and are not ground for reversal.

APPEAL from Superior Court, Santa Cruz County; F. J. McCann, Judge.

Action by Lucius Sanborn and William Vanderhurst, executors of the will of Charles Ford, deceased, A. A. Morey and J. S. Menasco against J. F. Cunningham, James Dougherty and Henry L. Middleton, partners trading as J. F. Cunningham & Co., for the balance of an account for goods sold and delivered. Judgment for plaintiffs. Defendants appeal. Affirmed and amended.

Spalsbury & Burke for appellants; Julius Lee, for respondents.

HAYNES, C.—This action was brought by Charles Ford, A. A. Morey and J. S. Menasco, copartners in the name of Charles Ford & Co., against J. F. Cunningham, James Dougherty and Henry L. Middleton, copartners in the name of J. F. Cunningham & Co., to recover $406.08, balance of an account for goods, wares and merchandise sold and delivered, alleging that the whole value of the goods sold was $906.08, of which $500 had been paid. The answer denied a sale and delivery to the defendants of goods, etc., of the aggregate value of $906.08, or of any greater value than $156.08, which last-named sum they admitted to be due and unpaid. Upon the first trial,

plaintiffs had judgment, and upon appeal the judgment was reversed, and a new trial ordered: Ford v. Cunningham, 87 Cal. 209, 25 Pac. 403. Afterward, Charles Ford died, and Lucius Sanborn and William Vanderhurst, his executors, were substituted as parties plaintiff in his stead. The sum of $156.08, admitted by defendants to be due, was for three lots of potatoes sold and delivered to them by Ford & Co. The remaining $250 is part of the sum of $750 agreed to be paid to Ford & Co. for a lot of barley, but whether the firm of J. F. Cunningham & Co., or J. F. Cunningham individually, is liable therefor, is the ultimate question. A jury was had, and resulted in a verdict against the defendants for the amount claimed.

The circumstances connected with the barley transaction are the following: E. H. Walker was indebted to Ford & Co. in the sum of $1,045, and gave them a chattel mortgage upon his crop of barley, then growing, to secure said indebtedness. This barley, after it was harvested and threshed, was delivered to Ford & Co., and stored in a warehouse at Watsonville, in which town Ford & Co. conducted a mercantile business. The defendants, Cunningham & Co., were also merchants doing business at Felton, in the same county. On September 8, 1884, after the barley had been delivered to Ford & Co., J. F. Cunningham came to the store of Ford & Co., and said to Mr. Menasco, of the last-named firm: "I will take that Walker lot of barley; you have it shipped up right away; and I will send you $750 the following week"; to which Mr. Menasco replied, "All right." Soon after this, Ford & Co. received a check or draft drawn by the Santa Clara Valley Mill and Lumber Company in favor of Cunningham & Co. on the First National Bank of San Jose for $500, indorsed by Cunningham & Co., on account of the barley, leaving a balance of $250 unpaid, which is the sum in controversy. Menasco testified that he instructed his partner Morey to have the barley shipped to Cunningham & Co., but it was billed by the warehouseman to Cunningham. Cunningham testified that in January, 1884, he bargained with Walker for his crop of barley, fifty acres at $25 per acre; that Walker then owed him $250, which was to be considered paid on the contract, and he was to pay the balance in money; that, in May, Walker said he wanted to reserve ten acres, and the amount to be paid was reduced to

$1,000; that, a few weeks before the conversation with Menasco, Walker told him he had given a "crop mortgage" to Ford & Co., and that he should pay them $750 on the barley. It further appears from the evidence that Ford & Co. charged the $750 to Cunningham & Co.; that the $500 remitted was the money of the last-named firm, and was charged to Cunningham. It also appeared that, for a year or more prior to the transaction relating to the barley, there had been more or less dealings between the two firms, and some, if not all, the shipments of potatoes making up the item of $156.08 were shipped to Cunningham—that is, the shipping bills named him as the consignee. Some correspondence and other matters of evidence will be noticed in another connection.

It was urged upon the motion for new trial, and is urged here, that the evidence is insufficient to justify the verdict, in that it does not show the transaction to have been with the defendants as a firm or copartnership, but that it was the individual transaction of Cunningham; that the facts do not show a sale by Ford & Co., but that Cunningham bought the barley from Walker. Whether there was or was not a contract between Cunningham and Walker for the purchase and sale of the barley is immaterial. The barley was in possession of Ford & Co., and was delivered by them to defendants, or to Cunningham, upon the agreement that they should be paid $750. Whether the defendants are liable, or whether Cunningham alone is liable, was submitted to the jury upon an instruction prepared by the defendants, which fairly presented the material questions of fact, and the jury found in favor of plaintiffs. The evidence was conflicting, but is sufficient to support the verdict. A large number of errors of law occurring upon the trial are also specified and argued by appellants.

1. Menasco's statement that "Morey ordered it shipped to Cunningham & Co.," if erroneously permitted to remain, did not prejudice defendants, as Morey afterward testified that he so ordered it. Besides, it did not appear, at the time the motion to strike out was made, but that the witness had personal knowledge of the fact.

2. The refusal of the court to strike out of Menasco's testimony the statement of the bank cashier that "he did not think it possible for me to get it," referring to the $500 check

received by plaintiffs, was not error. The inquiry appears to have been made of the bank for the purpose of obtaining the original check as evidence. As the plaintiff had no right to make a personal search among the papers of the bank, the inquiry was proper, and it was not necessary to call the cashier to testify.

3. Whether the court erred in permitting the witness to testify to its contents is immaterial. There was no controversy between the parties as to its contents.

4. Defendants' objection to the following question put to plaintiffs' witness was properly overruled: "Question. Was this barley transaction with Cunningham & Co. in their general line of business?" The controversy was whether it was a transaction by defendants as copartners or by Cunningham individually. If the defendants dealt in grain, or especially in barley, it would tend to show that it was a partnership transaction. These two firms had had transactions with each other, and, if the transaction was within their general line of business, plaintiffs had a right to assume that he was acting as the agent of his firm. He was at least the ostensible agent in all transactions within the scope of their ordinary business, and, if he did not intend his firm to be charged with the transaction, Cunningham should have disavowed his agency for the firm.

5. One of plaintiffs' witnesses was asked upon cross-examination, "What was the value of that barley?" Plaintiffs' objection was properly sustained. The agreement was to pay $750 for "the Walker barley." Nothing was said as to the quantity or value. Defendants received all of it, and were bound to pay the agreed price, regardless of its value.

6. Defendants' objection to the introduction in evidence of the Walker crop mortgage was properly overruled. The special objection urged was that it was void as to creditors, of whom Cunningham was one, because it was not sworn to by Walker, the mortgagor. This objection is based upon the fact that in the body of the affidavit the name "E. H. Wheeler" is written, instead of "E. H. Walker," thus: "E. H. Wheeler, the mortgagor in the foregoing mortgage named," etc. The mortgage purports to be made and is signed by Walker, and the affidavit is also signed by E. H. Walker. The error does not affect its validity.

7. The court overruled an objection made by defendants to oral evidence of the contents of certain written statements of accounts and letters which the witness stated had been addressed and mailed to defendants. Upon the former appeal, certain questions relating to the same statements of accounts and letters were considered: See Ford v. Cunningham, 87 Cal. 209, 25 Pac. 403. It was there said: "The witness stated that he had no personal knowledge that the communications addressed to Cunningham & Co. were mailed, except that copies thereof appeared in plaintiffs' copy-book, and that it was a general custom of his firm to place letters in a box in the store, from which they were taken to the office. No foundation, therefore, was laid for the introduction of the evidence. Assuming that secondary evidence could, under such circumstances, be introduced, the press copies were the best evidence, next to the originals themselves." For that, and another erroneous ruling, the judgment in favor of the plaintiffs was reversed and a new trial ordered; and upon the second trial the same witness, after testifying as above in regard to writing the letters, and that the postage was prepaid and the letters put in the mail-box at the store, further testified: "This box was emptied daily. It was the business of Mr. White, then in our employ, to take these letters and deposit them in the post-office." Mr. White testified that he was employed by plaintiffs from 1883 to 1887; that during the fall of 1884 it was his duty to take the mail to the postoffice every night, and that he did so during September, October, November, and December, 1884; that if any letter was addressed and put in the box at the store during that time, he took it to the postoffice, and deposited it there in the United States mail-box, and that he also did so during March and April, 1885. We think this sufficient proof of the fact of mailing. Indeed, it is all the proof such a fact is capable of, unless in exceptional cases. Demand was made by the defendants for the production of the original letters and statements, and, the same not being produced, the witness was permitted to read the copies of the letters from the letter-press book. The statements were not copied in the book. There is no error in permitting this secondary evidence to be given.

8. Plaintiffs were permitted to give oral evidence of the contents of a letter written by Cunningham & Co. to Ford

& Co., September 25, 1884, over defendants' objection. The letter had been used on the former trial, but was mislaid or lost. The evidence accounting for its nonproduction was not very satisfactory as to the efforts made to find and produce it. The letter was as follows: ''We have not received bill of last oats or barley. Would you please send the same.'' Conceding, without deciding, that the court erred in receiving this evidence, the defendants were not prejudiced, as there was no controversy in regard to the contents of the letter, and the writer, Mr. Middleton, testified in regard to it, and fully explained it.

9. Objection was made to the introduction in evidence of the entry of the barley transaction in the ledger of Ford & Co. One of the objections urged here is that ''the ledger is secondary evidence.'' Mr. Morey testified that he was the bookkeeper of Ford & Co.; that the entry in the ledger was an original entry; that it was not entered in a pass-book or elsewhere, and then transferred to the ledger. It is also urged that the preliminary proof of the account-books kept by Ford & Co. was not sufficient. The entry in the ledger, being original, was competent for one purpose, if no other, viz., it tended to show with whom Ford & Co. understood they made the transaction, and to whom they looked for payment. The question here presented is clearly distinguishable from that decided upon the former appeal. There defendants' books were offered to show the absence of an entry relating to the barley, and as such absence might have been from negligence, or an intention to improperly or fraudulently omit it, it was not only proper, but necessary, to prove, preliminarily, the correctness of the books; and, having so proved them, they were improperly excluded. Here, this entry, though in the ledger, was original, and, as to the fact of its existence, was affirmative evidence, and, besides, there was other testimony, though not as to the correctness of their books, yet which tended more directly to establish the correctness of this particular entry than the technical proof of the correctness of the books, insisted upon by appellants. The court did not err in receiving the evidence objected to.

10. Appellants' further contend that the court erred in permitting respondents' counsel, during his closing argument to the jury, ''to read to the court, in the presence of the jury,''

from one of the California Reports. The fact that a cause is being tried before a jury does not take away the right of a party to instruct the court upon the law of the case by proper argument or the reading of authorities; and whether the jury shall be directed to retire during such reading is a question resting in the sound discretion of the trial court, and to be determined in view of the circumstances of the particular case. There is nothing in this record to indicate that the court did not properly exercise its discretion in ruling upon this objection of appellants.

11. Defendants' request to instruct the jury, marked "2," was properly refused. If plaintiffs were entitled to judgment against the defendants, it was upon the promise to pay $750 for the Walker barley, and not for the value of the barley, which may have been more or less than that sum.

12. Appellants' request No. 3 was also properly refused. Whether or not there was an agreement or understanding between Cunningham and Walker that Cunningham would pay $1,000 for the barley could not affect defendants' liability. The barley was mortgaged to Ford & Co. as security for a prior indebtedness, and was in their possession. Defendants agreed to pay a certain sum to plaintiffs if they would ship the barley to them. Whether plaintiffs knew of the agreement between Walker and Cunningham or what the defendants should do with or concerning the barley after it was delivered to them was immaterial. They were not in any manner affected by such prior agreement. The defense does not show that Ford & Co. had any notice of the arrangement between Cunningham and Walker at or before the time they took the mortgage, nor was there any element of ratification of the Cunningham-Walker arrangement in the transaction. They were content to receive $750 and let the barley go, and were not concerned with anything else.

13. The remaining requests on the part of defendants, which were refused, are sufficiently covered by what has been said. Besides, the fourth instruction requested by defendants fully and clearly stated the law applicable to the case, so far as it was, or could be, under the evidence, affected by the prior arrangement between Cunningham and Walker, and this instruction was given. There was no error in the instructions given at the request of the plaintiffs.

14. The verdict and judgment were entitled, "Charles Ford, A. A. Morey, and J. S. Menasco, partners trading under the firm name of Charles Ford & Co.," as the plaintiffs; overlooking the change made by the death of Ford, and the substitution of his executors, which had been made by order of court. It is contended by appellants that the verdict and judgment are void for this reason. The mistake is capable of correction, and does not require a reversal of the judgment: Code Civ. Proc., sec. 475.

Finding no error in the record which would justify a reversal, I advise that the judgment and order appealed from be affirmed, with a direction to the court below to amend the title of the verdict and judgment so as to conform to the former order, substituting Ford's executors as parties.

We concur: Vanclief, C.; Belcher, C.

PER CURIAM.—For the reasons given in the foregoing opinion, it is ordered that the verdict and judgment as entered in the court below be amended so as to conform to the former order, substituting Ford's executors as parties in place of Charles Ford, deceased, and that, as amended, the said judgment, and also the order appealed from, be affirmed.