[No. 878.  Decided January 5, 1894.]

NAZAREE VINCENT, *Plaintiff*, v. SNOQUALMIE MILL COMPANY *et al.*, *Respondents*, WASHINGTON IRON WORKS, *Appellant.*

THE PARKE & LACY MACHINERY COMPANY, *Plaintiff*, v. SNOQUALMIE MILL COMPANY *et al.*, *Respondents*, WASHINGTON IRON WORKS, SAMUEL D. GUSTIN, GEORGE W. TIBBETTS AND H. J. MORITZ, *Appellants.*

FRAUDULENT CONVEYANCES — MORTGAGE BY CORPORATION — VALIDITY — REGISTRATION — MECHANICS' LIENS — CLAIM FOR COMMON LABOR — CONSTRUCTION OF RAILROAD — DEFECTIVE NOTICE.

Where a corporation which is heavily indebted gives a mortgage, whereby it is enabled to pay the purchase price and secure the legal title to the property mortgaged, and by that means put itself in better shape for continuing business, such mortgage will not be held to be given by an insolvent corporation for the purpose of hindering, delaying and defrauding creditors.

Although the resolution passed by the trustees of a corporation authorizing the giving of a mortgage may not have described the conditions which were to be inserted, the fact that provisions were inserted relating to keeping the property insured, and authorizing the mortgagee to take possession, and to foreclose the mortgage in case the property should be attached, would not render the mortgage void.

The defective record of a mortgage is immaterial, when the mortgagee at once enters into and remains in possession of the property.

A chattel mortgage is not void because the affidavit as to good faith attached thereto is stated in the past, instead of the present, tense.

One who performs labor upon and about a mill is entitled to the benefit of the law giving mechanics a lien.

A claim of lien for work done as foreman in the construction of a certain railroad is defective when the lien notice does not allege that the defendant had any interest in or ownership of the land over and through which said railroad was constructed.

*Appeal from Superior Court, King County.*

*Preston, Albertson & Donworth, John G. Barnes,* and *James M. Epler,* for appellants.

*White & Munday,* and *Cox, Teal & Minor,* for respondents.

The opinion of the court was delivered by

SCOTT, J. — Two actions were begun in the superior court of King county, which were afterwards consolidated and tried together, and a single judgment rendered in both actions in favor of the plaintiffs. Certain of the defendants appealed. One was an action in which Nazaree Vincent was plaintiff, and was brought to foreclose a laborer's lien for labor performed for the Snoqualmie Mill Company. The other action was brought by the Parke & Lacy Machinery Company to foreclose a certain mortgage covering both real and personal property, given to secure the sum of about fifty thousand dollars, alleged to have been executed by the Snoqualmie Mill Company to said plaintiff.

The numerous defendants in the action, aside from the Snoqualmie Mill Company, were brought in by reason of their having, or claiming to have, lien claims against the property. Upon the trial the lien claims of W. B. Main, A. W. McConnell, Angus McDonald, John Webster, Andrew Ballingall, John F. Keenan, Samuel Oke, W. G. Fowler, Neal Davis, Julius Schardt and Nazaree Vincent were found by the court to be valid and regular against the real estate for various sums. All these lienors, excepting Nazaree Vincent, had, before the commencement of either of these actions, brought several actions against the Snoqualmie Mill Company, in which their liens had been established. Being afterwards included as defend-

ants in these actions, the court allowed the judgment roll of the former actions to be introduced as evidence of the liens, and the proper establishment thereof, and adjudged their liens valid against all parties to these actions.    The claim of Nazaree Vincent was the subject of proof in the consolidated action, and the proof being satisfactory to the court his lien was declared valid.    All these liens were ordered paid from the proceeds of the sale of the property as first in order.

Upon the trial a single judgment was rendered, directing a sale of the real and personal property (the personal property consisting of various items of machinery and gearing situated in the mill), and directing that the proceeds be paid into court and distributed, first, to the payment of the said lien claims, and then to the Parke & Lacy Machinery Company to the amount of its claim, then being $52,703.32, with interest.    The sum adjudged to the Parke & Lacy Machinery Company was made up as follows: From the face of the mortgage was deducted the sum of $9,542.32, found by the court to have been paid by the Snoqualmie Mill Company, and to the balance there was added interest, and $700 paid to a keeper and night watchman at the mill, $2,470 paid for insurance on the mill, and $500 for counsel fees, all expended by the Parke & Lacy Machinery Company.

An order of sale was issued, and the property described in the mortgage was thereafter sold by the sheriff to the Parke & Lacy Machinery Company for the sum of $54,-895.10, which sale was confirmed by the court.

Two appeals were prosecuted in said action, one by Samuel D. Gustin and George W. Tibbetts, and the Washington Iron Works Company, attacking the validity of the mortgage given to the Parke & Lacy Machinery Company and the lien claims aforesaid allowed by the court; and the

other by H. J. Moritz, who claimed a lien against the property for labor performed thereon, which claim the court found to be invalid.

The Snoqualmie Mill Company was organized at Seattle in August, 1889, with Alfred Snyder as president and J. G. Startup as secretary, who, with T. G. Wilson, Lyman Elmore and O. D. Gilfoil, were trustees of said company. Some time after, this corporation contracted with the Parke & Lacy Machinery Company for its mill plant, and the machinery for the plant was delivered to the mill company by the Parke & Lacy Machinery company under a written contract, which is called a conditional sale, whereby said machinery company agreed to sell certain machinery, all of which is specifically described, to the mill company only upon the full payment of the contract price for the same. The amount due on this conditional sale on October 31, 1890, the date of the mortgage in question, was $32,000, with accrued interest amounting to $1,494.45. After this conditional contract of sale the said plaintiff, at various times, sold and delivered to the mill company at agreed prices other machinery and material to be used in said mill, amounting to $15,688.63; all of which is specifically described in the mortgage, and includes all machinery mentioned excepting so much as is mentioned in the conditional contract of sale, and on which there was due on said October 31st, $10,589.46, and $295.85 interest. Said Parke & Lacy Machinery Company also assumed a debt to one Moore, owed by the mill company for labor, amounting to $462.70, which was a lienable claim. The real estate upon which the mill property was situated was not the property of the company, but was owned by said Alfred Snyder and his wife.

On October 18, 1890, the trustees of said mill company met at Snoqualmie, which was its principal place of business, and passed a resolution authorizing the president and

secretary to mortgage the property of the corporation to raise fifty thousand dollars, and adjourned to meet at Seattle subject to a call of the president; and on October 31, 1890, said meeting was called at Seattle, all of the trustees being present. An accounting was had between said mill company and the Parke & Lacy Machinery Company, when it was found that the mill company owed said machinery company $45,106.09, and there was at said time due said Alfred Snyder $3,916, the purchase price agreed to be paid for the real estate upon which the mill was situated. At this time it was agreed between the machinery company and the mill company that the machinery company would pay the amount due said Snyder for the real estate, in order that title thereto might be conveyed to the mill company, and would further sell it outright the machinery which it had contracted to sell conditionally as aforesaid, and would take a mortgage upon said real estate and the machinery which it had sold to said company to secure the same. All the trustees of the mill company were present, and all assented thereto, and authorized the president and secretary to execute the mortgage therefor accordingly.

It appears that the mortgage in question covered no property whatever excepting the real estate aforesaid, for which the Parke & Lacy Machinery Company advanced the purchase price, and the machinery which had previously been sold by said machinery company to the mill company, and that said mortgage was given to secure the purchase price of such machinery and real estate aforesaid, with the exception of the small claim owed by the mill company to said Moore, which had been assumed by the machinery company as aforesaid. It is contended that the mill company had no other property of consequence than that covered by the mortgage, but this point is contested, and it appears that at said time said mill company had a certain quantity of lumber amounting to between fifty

thousand and seventy-five thousand feet, of the value of at least $6 per thousand; some timber contracts, eighty acres of land and a small amount of other property, the values thereof not being shown.

Upon the execution of the mortgage the mortgagee at once entered into possession of the property covered by it, but did not operate the mill, which remained idle until some time in February following. It is contended by the appellants, Gustin and Tibbetts and the Washington Iron Company, that the mortgage is void as being intended to delay, hinder and defraud creditors, and that the case falls within the decision of this court in *Thompson v. Huron Lumber Co.*, 4 Wash. 600 (31 Pac. Rep. 25), as appellant insists that the mill company was insolvent at the time this mortgage was executed.

It is not clearly apparent that the corporation was insolvent at said time. It had been operating its mill up to within a few days before the execution of the mortgage. It was then being pressed by its creditors and was unable to pay them at that time, and it is doubtful whether the general market value of its property equaled the amount of its indebtedness, but its evident desire was to continue in business, and to get the matters of the corporation in better shape by getting the title to the property which it was operating in its own hands, and it fairly appears from the record that the mortgage was executed in good faith for this purpose, and that the company, at the time the mortgage was given, intended to continue business through the mortgagee in the way of operating its mill, to whom possession thereof was transferred. After the execution of the mortgage a receiver was appointed by said court at the suit of Gustin and Tibbetts, to take possession of the mill property, and in February following, by permission of the court, the mill was leased to said Alfred Snyder by the Parke & Lacy Machinery Company. This lease was also

ratified by the Snoqualmie Mill Company.   Snyder oper-
ated the mill under the lease for several months, and from
the proceeds of the business he paid the Parke & Lacy
Machinery Company nearly $10,000, by order of the
court, to apply on its said mortgage claim; and thereafter,
by order of the court, he paid to the receiver $3,000 from
such proceeds.

We are of the opinion that this case does not fall within
the rule laid down in *Thompson v. Huron Lumber Co.*,
under the facts above stated.   We are also of the opinion
that the fact that the mortgage in question was given to
secure the purchase price of the identical property covered
by the mortgage would raise a sufficient equitable claim
upon the part of the mortgagee thereunder to take it out
of the rule laid down in said case, as the mortgage covered
the very property the purchase price of which it was given
to secure; the title to the greater portion of it having
passed to the mill company in consequence of having given
the mortgage.

It is further contended that the mortgage is void because
it was not regularly authorized by the mill company.
Several objections are raised in this regard, the first being
that the business was finally concluded at Seattle, whereas
the place of business of the mill company was at Snoqual-
mie, and its by-laws required the meetings of its trustees
to be held there.   And it is further contended that the
resolution authorizing the giving of the mortgage would
not authorize the insertion of the provisions contained in
the mortgage relating to keeping the property insured, and
authorizing the mortgagee to take possession, and to fore-
close the mortgage in case the property should be attached,
and some such other conditions.   It is further contended
that the record of the mortgage is defective and insufficient
to give notice.   It appears, however, as stated, that all of
the trustees of the company were present at both meetings

authorizing the giving of the mortgage, and while the resolution itself did not describe the conditions which were to be inserted, or specially mention or authorize the insertion of the conditions complained of, the fact that they were inserted would not render the mortgage void, and as the mortgagee at once entered into and remained in possession of the property, the recording of the mortgage was an immaterial matter.

It is further contended that the mortgage is void in so far as it purports to be a chattel mortgage, because of the defective affidavit; for the reason that the affidavit states that the instrument *was* made in good faith, instead of saying that the instrument *is* made in good faith; and because the notary public before whom the affidavit was taken failed to specify his place of residence thereon.  His place of residence was given in certifying to the acknowledgment, and we are of the opinion that there is no merit in any of these objections.

Said appellant further contends that the court erred in sustaining the several lien claims aforesaid, which were proven by the introduction of the judgment rolls in the suits wherein the same were established.   It does not appear that appellants objected to the introduction of this proof at the time it was offered, but on the contrary then conceded the validity of said claims.   Afterwards appellant's attorney stated to the court as follows:

"Just before adjournment this morning I conceded that the Washington Iron Works would not contest these liens; I would like to withdraw that and submit the matters on the facts just as they will rise in the case.

"*The Court:* We will give you leave to do so."

No motion was made, however, to strike the proofs which had been introduced, nor does the record show any special objections thereto upon the trial of this cause.   It is now urged that the judgments establishing the liens were in-

valid because the receiver was not made a party to said suits, and that the claims were barred by limitation before the commencement of this action. The appellants cannot avail themselves of these objections here, because it does not appear that they were raised below, and an examination into their merits is unnecessary for that reason.

As to the lien of the plaintiff Vincent, which was established at the trial, it is urged that his claim was not that of a mechanic within the meaning of the law, and that his notice of lien was defective. It appears that his claim was for labor performed upon and about the mill, and he was entitled to the benefit of the lien law. No ground is pointed out wherein the notice of lien is defective.

Appellant Moritz' claim of lien was resisted by the respondent, the Parke & Lacy Machinery Company. Said Moritz was made a defendant in the action brought by said company to foreclose its mortgage. He appeared and filed a cross complaint setting up his claim of lien for work done as foreman in the construction of a certain railroad described in the lien notice as "commencing on the line of the Seattle, Lake Shore & Eastern Railway, near Snoqualmie Falls depot, at Snoqualmie, King county, State of Washington, and running across the Snoqualmie river, and into and through section twenty-nine (29) in township twenty-four north, of range eight east, and thence in a general northerly direction into section twenty of the same township and range—said road being about one and three-fourths miles in length; and being the only railroad found in said two sections." He further alleged in said notice "that the said Snoqualmie Mill Company is the owner and reputed owner of said railroad." This lien notice was made a part of the cross complaint. He further set up in said cross complaint that on the 8th day of March, 1891, he had commenced an action to enforce his said lien, and that at the date thereof a receiver of all the property

of said Snoqualmie Mill Company had been appointed, and that said property was in the receiver's possession and under his control at said times, and for that reason no decree declaring the existence of the plaintiff's claim as a lien against the property was allowed by the court, and that a personal judgment only against the Snoqualmie Mill Company was rendered for the amount of his claim. The Parke & Lacy Machinery Company demurred to this cross complaint, and the demurrer was sustained.

As one of the objections to appellant's claim of lien disposes of the same, it is the only one necessary to refer to. It is contended by the respondent aforesaid that the notice of lien is defective on the ground that it does not allege that the Snoqualmie Mill Company had any interest in or ownership of the land over and through which said railroad was constructed. The only reference to such railroad and ownership is contained in the quotations from the lien notice above appearing. It is not claimed in said notice that the Snoqualmie Mill Company had any interest in the lands aforesaid, nor any right-of-way whatever for its said railroad, and the objection of the respondent to this notice is well taken. *Front St. Cable Ry. Co. v. Johnson*, 2 Wash, 112 (25 Pac. Rep. 1084); *Nelson v. Clerf*, 4 Wash. 405 (30 Pac. Rep. 716).

We find no error in any of the proceedings of the court, and its judgment is affirmed.

Dunbar, C. J., and Stiles, Hoyt and Anders, JJ., concur.