[No. 17366.    Department Two.    January 22, 1923.]

FIRST NATIONAL BANK OF YAKIMA, *Respondent,* v.
MAURICE F. OPPENHEIMER, *as Receiver
etc, Appellant.*[1]

CHATTEL MORTGAGES (13) — VALIDITY — DESCRIPTION OF DEBT SECURED—CERTAINTY. A chattel mortgage is not invalidated by a mistake in the description of the indebtedness which it was given to secure, in the rate of interest, and the name of the payee of one of the notes secured, where the amount and date of the indebtedness was truly stated and there was no fraud, and subsequent creditors were not injured.

SAME (75-1)—FORECLOSURE—JUDGMENT—RELIEF—REFORMATION OF MORTGAGE. An equitable action to foreclose a chattel mortgage, which contained a mistake in the description of the deed, may be maintained and reformation granted, without first prosecuting an action to reform and correct the mistake.

SAME (18)—AFFIDAVIT—SUFFICIENCY. In a chattel mortgage executed on behalf of a corporation by its secretary, the acknowledgment of which states that he is authorized so to do, the affidavit

[1]Reported in 212 Pac. 164.

of good faith is not fatally defective, in that the secretary deposes that he is the "individual mortgagor" named in the instrument; since such affidavits are to be liberally construed.

Appeal from a judgment of the superior court for Yakima county, Holden, J., entered January 7, 1922, in favor of the plaintiff, in an action to foreclose a chattel mortgage, tried to the court. Affirmed.

*B. B. Adams,* for appellant.

*Richards, Fontaine & Gilbert,* for respondent.

PARKER, J.—The plaintiff bank commenced this action in the superior court for Yakima county, seeking foreclosure of a chattel mortgage given to it to secure an indebtedness owing by the defendant Inland Motor Car Company. The intervener, Oppenheimer, having become the receiver of the motor car company because of its insolvency, thereafter became a party to the action as such receiver. A trial upon the merits resulted in a decree awarding to the bank foreclosure of the mortgage as prayed for, and also judgment establishing the indebtedness as a claim against the trust funds in the hands of Oppenheimer as receiver, in so far as such indebtedness should remain unsatisfied after the sale of the mortgaged property and the application of the proceeds thereof towards the payment of the indebtedness. From this disposition of the cause in the superior court, Oppenheimer, as receiver, has appealed to this court.

On June 18, 1920, the motor car company executed its note in form payable to S. S. Bleiweiss for the principal sum of $1,700, payable sixty days after date, bearing interest at ten per cent per annum from maturity. This note was signed "Inland Motor Car Co. by S. S. Bleiweiss, Sec'y." This note was immediately transferred to the bank and the proceeds thereof credited by the bank upon the deposit account of the motor

car company, and thereafter in due course checked out by the motor car company and used in its business. On the same day, to wit, June 18, 1920, the motor car company executed and delivered to the bank a chattel mortgage upon an automobile, manifestly with a view of thereby securing to the bank the indebtedness evidenced by this note. This mortgage was signed "Inland Motor Car Co. by S. S. Bleiweiss, Secy." In the body of the mortgage the debt purported to be secured thereby is described as follows:

"This mortgage is made to secure the payment of Seventeen Hundred Dollars, with interest at the rate of 8 per cent per annum from August 17, 1920, until paid, according to the terms of one promissory note of even date herewith made by the mortgagor to the mortgagee payable sixty days after date."

It will be noticed that this description of the indebtedness mentions the note as being made "to the mortgagee," the bank, also, as bearing eight per cent interest; while the note above described and sought to be recovered upon in this action as being secured by the mortgage purports to have been made to Bleiweiss and to bear ten per cent interest. The amount of the indebtedness is the same in each description, and the time of the commencement of interest is also the same in each description. In the bank's complaint it is alleged, in substance, that the mortgage was in fact given to secure the indebtedness evidenced by the first above mentioned note, and that the description of the indebtedness in the mortgage is a mutual mistake in so far as that description varies from the note first above mentioned. The prayer is for foreclosure of the mortgage to satisfy the debt evidenced by the note first above mentioned, and for general relief. The evidence clearly shows that the mortgage was executed for the purpose alleged in the complaint; that a mistake in the

description of the indebtedness was made as therein alleged, contrary to the intention of the parties; and that the making of the note, its transfer to the bank and the execution of the mortgage, constituted a single transaction as the consummation of a loan of $1,700 then made by the bank to the motor car company, Bleiweiss acting throughout for the motor car company. It is also plain from the evidence that the utmost good faith was exercised by both the bank and Bleiweiss, acting for the motor car company, looking to the creation of an indebtedness of $1,700 from the motor car company to the bank and the securing of that indebtedness by this chattel mortgage.

It is first contended that the mortgage is void and of no effect as securing the indebtedness evidenced by the note first above described, in that it is insufficiently and erroneously described in the mortgage, and that such want of sufficient description of the note in the mortgage cannot be cured by extrinsic evidence. There are some decisions which may seem to lend support to this view, but when critically read we hardly think they are controlling under the circumstances shown. In *Wood v. Weimar*, 104 U. S. 786, there was drawn in question a defective or erroneous description in a chattel mortgage of an indebtedness purporting to be secured thereby, particularly in that the mortgage erroneously named the debtor. In holding such erroneous description of the debt so intended to be secured as not rendering the mortgage void as security therefor, Chief Justice Waite, speaking for the court, said:

" 'It is not to be denied that a deed which misrepresents a transaction it recites, and the consideration on which it is executed, is liable to suspicion. It must sustain a rigorous examination. It is, certainly, always advisable fairly and plainly to state the truth. But if, upon investigation, the real transaction shall appear to be fair, though somewhat variant from that which is

described, it would seem to be unjust and unprecedented to deprive the person claiming under the deed of his real equitable rights, unless it be in favor of a person who has been in fact injured and deceived by the misrepresentation.' Here it has been found that all was fair. It was material for creditors to know the amount of the indebtedness secured, and the property covered. These are truly stated. To enforce his mortgage, the mortgagee must prove his debt, and he can recover only to the extent of what he proves. If the items which make up the debt are particularly described in the mortgage, it may save trouble in establishing the facts; but if there has been no fraud, and subsequent creditors have not been injured by the omission of specifications, identity may be established by parol. In making the proof, the debt must come fairly within the general description which has been given; but if it does, and the identity is satisfactorily made out, the mortgage will be sustained where good faith exists."

Among other decisions lending support to this view we note the following: *Webb v. Stone*, 24 N. H. (4 Foster) 282; *Holmes v. Hinkle*, 63 Ind. 518; *Paine v. Benton*, 32 Wis. 491; *Weber v. Illing*, 66 Wis. 79, 27 N. W. 834.

Some contention is made in this connection that, in any event, the bank should have been required to seek and obtain reformation of the mortgage by a suit in equity, before it should be awarded foreclosure thereof in this action. This is a suit in equity, and we think the issues tendered by the pleadings were such as to entitle the bank to the relief granted it, which may be regarded to be in part a reformation of the mortgage. The receiver had all the opportunity to defend in this action upon that question that he could possibly have had in a separate suit in equity seeking reformation alone. We are of the opinion that the mortgage was properly foreclosed in so far as the identity of the debt secured thereby is concerned.

We have noticed that the mortgage is signed by the motor car company by Bleiweiss as secretary. The acknowledgment and affidavit of good faith indorsed upon the mortgage read as follows:

"State of Washington, ⎱ ss.
    "County of Yakima. ⎰

"Be It Remembered, That on this 18 day of June, 1920, before me, the undersigned Notary Public in and for said County and State, personally appeared S. S. Bleiweiss to me known to be the Secretary of the corporation that executed the within and foregoing instrument, and they acknowledged to me that they signed the same as and for the free and voluntary act and deed of said corporation, for the uses and purposes therein mentioned; and on oath stated that they were duly authorized to execute said instrument and that the seal affixed is the corporate seal of said corporation.

"Witness my hand and official seal the day and year this certificate first above written.

[Signed] F. H. Sharkey,
[SEAL]          Notary Public for Washington,
                     residing at Yakima.

"State of Washington, ⎱ ss.
    "County of Yakima. ⎰

"S. S. Bleiweiss, Secy., being first duly sworn, on oath deposes and says, That he is the individual Mortgagor in the within instrument named; that said mortgage is made in good faith and without any design to hinder, delay or defraud creditors.

"[Signed] S. S. Bleiweiss

"Subscribed and sworn to before me this 18 day of June, 1920.

"[Signed] F. H. Sharkey,
"Notary Public for Washington,
[SEAL]          residing at Yakima, in said County."

Contention is made in behalf of the receiver that the affidavit of good faith is fatally defective in that it refers to Bleiweiss as "the individual Mortgagor," rather than as secretary of the motor car company mak-

ing the affidavit in behalf of the company. It is plain from the language of the acknowledgment accompanying the affidavit of good faith that Bleiweiss is the secretary of the company and that he executed the mortgage for the company; and the mere fact that in the affidavit of good faith he calls himself the individual mortgagor does not change the fact that he is making the affidavit and therein swearing to what is within his personal knowledge; nor does it change the fact that he is the secretary of the motor car company. That affidavits of this nature are to be liberally construed, in the absence of fraud or suspicious circumstances accompanying them, finds support in the following decisions: *Vincent v. Snoqualmie Mill Co.*, 7 Wash. 566, 35 Pac. 396; *Woods v. Young Lumber Co.*, 107 Wash. 432, 181 Pac. 865; *Sanborn v. Cunningham*, 4 Cal. Unrep. Cases 95, 33 Pac. 894; *American Soda Fountain Co. v. Stolzenbach*, 75 N. J. L. 721, 68 Atl. 1078. It is almost inconceivable that the affidavit was made other than in behalf of the motor car company, when we are reminded that Bleiweiss executed the mortgage for the motor car company and that in the acknowledgment he makes oath that he is duly authorized to so execute it.

We conclude that the decree and judgment must be affirmed.

It is so ordered.

MAIN, C. J., FULLERTON, and TOLMAN, JJ., concur.