[No. 28721.   Department Two.   December 19, 1942.]

PUGET SOUND PULP & TIMBER COMPANY, *Appellant,* v.
CLEAR LAKE CEDAR CORPORATION, *Defendant,* CECIL V.
GRAY, *Garnishee Defendant,* PRESTON E. LOCKE,
*Respondent.*[1]

[1]Reported in 132 P. (2d) 363.

*Evans, McLaren & Lane,* for appellant.

*Falknor, Emory & Howe,* for respondent.

BLAKE, J.—Plaintiff brought this action to recover $4,789.84—balance due for logs sold and delivered to Clear Lake Cedar Corporation. Upon commencing the action, plaintiff sued out a writ of garnishment, which, on January 20, 1941, was served on Cecil V. Gray, doing business as Gray Lumber & Shingle Company. Gray answered the writ, admitting an indebtedness to defendant, Clear Lake Cedar Corporation, of $4,442.86. Of this amount, $1,217.52 was due for shingles sold and delivered by the latter to the former on December 5 and 27, 1940, and January 2, 1941. The balance was due on account of shingles sold and delivered on January 17, 18, 20, and 21, 1941.

Preston E. Locke intervened, claiming a prior lien upon the funds as proceeds from the sale of shingles upon which he held a chattel mortgage executed and delivered by Clear Lake Cedar Corporation May 1, 1940. The parties stipulated that the funds should be deposited in court to abide trial and decision of the issue of priority between plaintiff's garnishment and intervener's chattel mortgage. The court made find-

ings establishing the validity of intervener's mortgage, and conclusions declaring the mortgage to be a prior lien upon the funds deposited in court by the garnishee defendant. From judgment awarding the funds to intervener, plaintiff appeals.

Before stating the questions raised on the appeal, we shall make a brief summary of the business relationship of the parties to the litigation and of the contents of intervener's chattel mortgage.

The defendant, Clear Lake Cedar Corporation, was a manufacturer of shingles. Practically all the logs used by it in the manufacture of shingles were purchased on open account from appellant, Puget Sound Pulp & Timber Company. The shingles were practically all sold to the garnishee defendant, Cecil V. Gray, doing business as Gray Lumber & Shingle Company, on open account, f. o. b. loading point.

Preston E. Locke was a stockholder in defendant, Clear Lake Cedar Corporation, from its inception, and, from May 1, 1940, was its president. On April 17, 1940, he loaned the company five thousand dollars, to be secured by a chattel mortgage on its shifting stock of logs and shingles. By the terms of the mortgage, Locke agreed to loan an additional five thousand dollars, which he did on April 30, 1940. Of the five thousand dollars loaned by Locke on April 17th, $3,836.54 was paid immediately to appellant on account of a balance then due and owing by Clear Lake Cedar Corporation for logs. On April 30th, the Clear Lake company paid appellant $2,456.59, which resulted in a bank overdraft against the former in the sum of $2,160.22. The Locke loan of April 30th covered this overdraft. So, of the ten thousand dollars loaned to the Clear Lake company by Locke, appellant got at least $5,996.76.

The chattel mortgage was executed and delivered on May 1, 1940. It is a typical chattel mortgage on a shifting stock of merchandise—permitting the sale of the manufactured product, the payment of operating expenses, and the purchase of raw materials out of proceeds; and providing for the accounting and application of surplus of proceeds upon the mortgage debt. It was also stipulated that the inventory of logs and shingles on hand should not be allowed to fall below five thousand dollars. With respect to contents and terms, the instrument fully meets the requirements laid down in *Miller v. Scarbrough,* 108 Wash. 646, 185 Pac. 625.

Appellant, however, challenges its validity and effectiveness on the following grounds: (1) That it is void because of a defective affidavit of good faith; (2) that it is invalid because it was executed without sufficient authority; (3) that it is insufficient to cover proceeds from the sale of shingles; (4) that it is ineffective because no accounting of the proceeds from sales was had between the mortgagor and the mortgagee; and (5) that, in any event, it is ineffective as against appellant.

*First.* Rem. Rev. Stat. § 3780 [P. C. § 9747], provides that a chattel mortgage is "void against all creditors of the mortgagor . . . unless it is accompanied by the affidavit of the mortgagor that it is made in good faith, and without any design to hinder, *delay* or defraud creditors. . . ." (Italics ours.) The affidavit in question omitted the word *delay.*

While we are loath to condone such omissions of statutory requirements, we think that, in view of the interchangeable meaning of the words "hinder" and "delay," the affidavit may be said to be a substantial compliance with the requirements of Rem. Rev. Stat., § 3780. *Petrovitzky v. Brigham,* 14 Utah 472, 47 Pac. 666; *Clayton v. Clark,* 76 Kan. 832, 92 Pac. 1117, 123

Am. St. 169; *Deseret Nat. Bank v. Kidman,* 25 Utah 379, 71 Pac. 873, 95 Am. St. 856. See, also, *Vincent v. Snoqualmie Mill Co.,* 7 Wash. 566, 35 Pac. 396; *Woods v. Young Lumber Co.,* 107 Wash. 432, 181 Pac. 865; *First Nat. Bank v. Oppenheimer,* 123 Wash. 290, 212 Pac. 164.

█ *Second.* Appellant contends that the mortgage is invalid because the persons executing it were without authority to do so. It was executed by Preston E. Locke, as president, and David F. Morris, as secretary. The stock of the corporation was owned by three persons: David F. Morris, 698 shares; Julia Morris, the former's mother, 272 shares; and Preston E. Locke, 28 shares. Prior to May 1, 1940, David F. Morris, Julia Morris, and Calvin C. Clark were the trustees of the company. On April 30th, Clark and Mrs. Morris resigned. May 1st, a meeting was held at which Locke and R. V. Welts were elected trustees. They, as trustees, authorized execution of the mortgage. Mrs. Morris was not present, but later approved what had been done. Indeed, she testified that, on April 30th, she "was turning everything over to [her] son to do as he saw fit."

While there may be some question as to the regularity of the election of Locke and Welts as trustees, it does not, to our minds, cast any doubt upon the validity of the mortgage. They were at least *de facto* trustees. 19 C. J. S. 78, § 740. The transaction was consummated in the best of good faith. The corporation got the money and used it for corporate purposes, among others, in payment of what it owed appellant. By accepting the benefits of the transaction, the corporation and its stockholders are estopped to deny its validity. *Dexter Horton & Co. v. Long,* 2 Wash. 435, 27 Pac. 271, 26 Am. St. 867; *Ekstrom v. Dierssen, Inc.,* 180 Wash. 493, 40 P. (2d) 138. It is also valid against appellant,

which had constructive notice of it. 19 C. J. S. 76, § 738 (3).

██ *Third.* Appellant contends that the mortgage does not cover the proceeds from sales of shingles. This contention is grounded primarily in the general rule that a mortgage lien does not attach to the proceeds of the sale of mortgaged property where the mortgagee gives unconditional consent to the sale. However, while there is some authority to the contrary, it is generally held that the mortgage lien attaches to the proceeds from sale of mortgaged property where the mortgagor sells pursuant to an agreement with the mortgagee to apply the proceeds on the mortgage debt. 10 Am. Jur. 849, § 203; 14 C. J. S. 891, § 266; *Farmers' State Bank v. Anderson,* 112 Neb. 413, 199 N. W. 728, 36 A. L. R. 1374, annotation, p. 1384, (b).

By the clearest of implications, our own decisions extend this rule to such mortgages as the one under consideration: where the mortgagee consents to the use of proceeds of sale for cost of operations and for replenishment of the mortgaged stock. *Benham v. Ham,* 5 Wash. 138, 31 Pac. 459; *Miller v. Scarbrough, supra; Keyes v. Sabin,* 101 Wash. 618, 172 Pac. 835. Indeed, the rule, as stated, was applied, though not discussed, in the case of *In re Cascade Fixture Co.,* 8 Wn. (2d) 263, 111 P. (2d) 991. It seems to us that it is sound not only in legal theory, but also in business practice. Any other rule would defeat the primary purpose of a mortgage on a shifting stock of merchandise—which is to enable a mortgagor to keep his business going and, at the same time, adequately protect the interests of the mortgagee. Others dealing with the mortgagor cannot be hurt by application of the rule if they take the precaution of consulting the public records.

*Fourth.* Appellant contends that the mortgagee should not be heard to assert his claim of lien because no accounting of proceeds of sales was had between him and the mortgagor. While the fact is as claimed by appellant, the contention is without merit. Locke was president of the Clear Lake company from May 1, 1940, and at all times had access to, and was familiar with, the company's affairs and accounts. There is not the slightest doubt that all proceeds from sales were applied and expended in accordance with the provisions of the mortgage. Neither is there any doubt that Locke knew that they were being so applied and that there was no surplus to be applied upon the mortgage. Indeed, when it came to making the sales of January 17, 18, 20, and 21, 1941, Locke gave his consent only upon condition that the invoices should be assigned to him, because those sales brought the inventory below the five thousand dollar minimum stipulated in the mortgage. We advert to this as evidencing his complete knowledge of the company's affairs and condition and his meticulous care in requiring that the mortgagor comply with all the conditions of the mortgage. Under the circumstances, an accounting by the corporation to him of proceeds from sales would have been a useless formality.

*Fifth.* Appellant contends that intervener is in no position to assert his claim of lien against it because the proceeds from the sales here involved come from shingles manufactured out of logs supplied by it to the mortgagor. The argument is that, since the mortgage provides for the use of proceeds of sale of the manufactured product for purchase of raw material, it creates a lien, in favor of appellant, against the proceeds from the sale of shingles manufactured from logs furnished by it. We think this contention is without substance. Appellant sold logs to defend-

714

ant, Clear Lake company, on open account. The logs belonged to the latter. Obviously, appellant could not have levied an attachment upon them, nor upon the shingles manufactured from them, which would have taken priority over intervener's mortgage lien. By the same token, it cannot acquire a prior lien by garnishment of the proceeds from the sale of the shingles manufactured from the logs. The use of the proceeds from sales to purchase raw materials, provided for in the mortgage, was permissive. The provisions permitting it in no sense created a lien upon the proceeds in favor of one furnishing raw material. Our views upon this issue find support in *In re Cascade Fixture Co. supra.*

Judgment affirmed.

ROBINSON, C. J., BEALS, and SIMPSON, JJ., concur.

'Reported in 132 P. (2d) 188.