[No. 8835–1–I.    Division One.    September 28, 1981.]

FIRCREST SUPPLY, INC., *Appellant,* v. ROBERT
PLUMMER, ET AL, *Defendants,* ARTHUR
BLUMHARDT, ET AL, *Respondents.*

*Davies, Pearson, Anderson, Seinfeld, Gadbow, Hayes & Johnson* and *Ronald Coleman,* for appellant.

*James M. Caraher* and *James E. O'Hern,* for respondents.

DURHAM, J.—Fircrest Supply, Inc. (Fircrest) brought an action to foreclose a materialman's lien. Fircrest appeals the denial of its motion for summary judgment and the granting of summary judgment in favor of respondents Arthur and Tanna Blumhardt and Great Northwest Federal Savings & Loan Association (Blumhardt). The validity of the property description and verification on the lien is disputed. The following background facts are pertinent.

Robert Plummer owned a parcel of land (acreage parcel) from which he had subdivided a smaller parcel (short plat). Plummer contracted to build and sell a house to the Blumhardts on one lot of the short plat, the address of which was 716 – 29th Avenue N.E., Puyallup, Washington 98371. Fir-

crest supplied Plummer, by his order, with building materials which were used in constructing the house. The first delivery took place February 21, 1978, and the last delivery occurred April 28, 1978.

The material was not paid for and Fircrest filed a claim of lien with the Pierce County auditor on July 13, 1978. The property upon which the lien was claimed was described as "716–29th Ave. NE, Puyallup, Wa. 98371." The claim was signed by David Perkins, Fircrest's "Registered Agent". The verification was signed by the notary public, instead of Perkins, and the notary's jurat was dated, but unsigned.

It appears that the Blumhardts closed the purchase transaction with Plummer on July 17, 1978. Great Northwest Savings agreed to finance the sale by a first deed of trust, and in doing so ordered title insurance. The title policy and clearance were issued by the title insurance company on July 26, 1978, with no mention of Fircrest's lien. The lien was overlooked because the individual who "posted" the lien at the title company failed to notice that the short plat had been created out of the acreage parcel. The property description on the claim of lien, being a street address, did not reflect the fact that the lot belonged to the short plat. Thus, the lien was posted to the acreage parcel and did not show up on the title report for the Blumhardt house. Between July 26 and August 15, 1978, the posting was rechecked and the error discovered.

Fircrest alleged priority of its lien against Blumhardt. Both sides agreed that there was no issue of fact, and each moved for summary judgment. The court granted summary judgment to Blumhardt on the ground that Fircrest's lien was invalid. From the denial of its motion for reconsideration, Fircrest appeals.

Fircrest first claims that the trial court erred in holding that the lack of a legal description invalidated the lien. It claims that RCW 60.04.060 does not require a legal description and that the court should not read in such a requirement.

■■ The contents of a materialman's lien are provided for in RCW 60.04.060, which reads, in relevant part:

Such claim [of lien] shall state, as nearly as may be, . . . a description of the property to be charged with the lien sufficient for identification, . . .

No recent Washington cases indicate what kind of description might be "sufficient for identification." However, early cases which address the topic suggest that a legal description is not mandatory. In *McHugh v. Slack*, 11 Wash. 370, 39 P. 674 (1895), the property was described in the lien claim by lot number and plat, but inaccurately so. The court stated, at page 373:

The statute does not require a precise and minute description of the property . . . All that is required is a description sufficient for identification, and it matters not what particular words are used if the property is thereby identified with reasonable certainty. Any description that identifies is sufficient, though not accurate.

Likewise, the court in *Whittier v. Stetson & Post Mill Co.*, 6 Wash. 190, 33 P. 393 (1893) repeated the often–quoted rule that the description is sufficient if it enables a party familiar with the locality to identify the premises with reasonable certainty to the exclusion of others. *See also* 53 Am. Jur. 2d *Mechanics' Liens* § 213 (1970).

Blumhardt insists that a lien claim must contain a legal description of the property, and gives two reasons for this position. First, the statute of frauds in this state requires that every contract for the sale or conveyance of platted real property contain a description by lot number, block number, addition, city, county, and state. *Martin v. Seigel*, 35 Wn.2d 223, 212 P.2d 107, 23 A.L.R.2d 1 (1949). RCW 65.08.060(3) defines "conveyance" as "every written instrument by which any estate or interest in real property is created, . . . or by which the title to any real property may be affected . . ." Blumhardt argues that the recording of a lien claim encumbers the property and gives the claimant an interest in the land. He asserts that this is a conveyance

subject to the statute of frauds.

We disagree with this rigid application of the statute. Other jurisdictions have held that the description in a claim of lien need not be as definite or certain as that required in a deed. *Hollenbeck–Bush Planing Mill Co. v. Roman Catholic Bishop,* 179 Cal. 229, 176 P. 166 (1918); *Pacific Lumber Co. v. Watters,* 74 Colo. 147, 219 P. 782 (1923); *Smith v. Bowder,* 31 S.D. 607, 141 N.W. 786 (1913); 57 C.J.S. *Mechanics' Liens* § 161(b) (1948).

Blumhardt also argues that there would be no way for third parties such as subsequent bona fide purchasers to discover the existence of the lien without a legal description. The Supreme Court has addressed this issue and found a street address sufficient to give constructive notice:

> [The lien claimant] is required to make a record of his claim, and the only purpose of such a record must be to give constructive notice to third persons, and not only to those who may have been familiar with the premises during and since the erection of the building, but also to those who may never have seen the premises . . . As to all such persons it may be admitted that it would be entirely sufficient to simply name the Brodek–Schlessinger building, on the corner of South Third and Washington streets.

*Whittier,* at 195. The grantor–grantee indexing system employed by county auditors in this state is designed to give constructive notice, so long as the description given is sufficient to identify the property with reasonable certainty to the exclusion of other parcels.

Two further reasons encourage us to follow the rule in *Whittier.* First, a lien claimant will frequently fill out the claim form himself. It does not appear that the legislature intended to burden the construction industry with the obligation to research title before each claim of lien. In RCW Title 60, only RCW 60.20.030, relating to nursery stock, requires a legal description. *Compare* RCW 60.20.030 *with* RCW 60.12.060, .12.200, .14.020, .16.020, .22.020, .24.075. The nursery stock lien statute has remained unchanged since 1955, whereas the provision for materialmen's liens

was amended as recently as 1975. The legislature could have included the requirement of a legal description of property in RCW 60.04.060, but did not.

We conclude that the street address given on Fircrest's claim of lien sufficiently identified the property to be charged with the lien to the exclusion of all others, and, therefore, met the statutory requirement.

Fircrest next assigns error to the trial court's holding that the verification portion of the lien was defective. Fircrest contends that the statutory verification requirements were substantially satisfied.

The lien claim was signed by David Perkins, "Registered Agent of Fircrest Supply, Inc." Below his signature appeared the following verification:

STATE OF WASHINGTON, } ss.
COUNTY OF Pierce }

David Perkins , being sworn, says,
Registered Agent
I am the claimant ~~xxxxxxxxxxxxxxxxxxxxx~~) above named; I have heard the foregoing claim read and know the contents thereof, and believe the same to be just.

Subscribed and sworn to before me this /3 th day of July 1928.

RCW 60.04.060 provides that the lien claim

> shall be signed by the claimant, or by some person in his behalf, and be verified by the oath of the claimant, or some person in his behalf, to the effect that the affiant believes the claim to be just; . . .

Both sides have called to our attention *Dorsey v. Brunswick Corp.*, 69 Wn.2d 511, 418 P.2d 732 (1966), in which the court held that the affidavit of good faith on a chattel mortgage was invalid for lack of the mortgagor's signature. While informative on this issue, the facts in *Dorsey* are easily distinguishable. As the court itself noted, at page 512:

[The mortgagor] did not sign what was intended to be the affidavit of good faith, there is no reference of any kind to him in that portion of the instrument, nor is there any recitation that an oath was administered to the mortgagor. No statement is attributed to [the mortgagor] on the subject of his good faith or on the lack of his desire to hinder, delay· or defraud creditors. On these vital matters he is silent.

Here, Perkins signed the claim directly above the verification. His name was typed in on the verification, clearly identifying him as the claimant who was sworn.

■ More persuasive authority is provided in *Stephenson v. Ketchikan Spruce Mills, Inc.,* 412 P.2d 496 (Alaska 1966), which dealt with Alaska's statutory requirement that lien claims "be verified by the oath of the claimant". Alaska Stat. § 34.35.070(c)(5). As in the present case, the claimant signed the claim form but not the verification, and the claimant's typed name appeared on the verification. The notary properly signed. The court held that there was "substantial compliance" with the statute and that the claim of lien was not ineffective due to the lack of signature on the verification. The court reasoned that the notary public's signature amounted "in substance to a certificate by the notary that the claim of lien was verified by the oath of Anderson." *Stephenson,* at 499. The Oregon Supreme Court reached the same conclusion in an earlier similar case. *Ainslie v. Kohn,* 16 Or. 363, 19 P. 97 (1888). *Cf. People v. Campbell,* 95 N.Y. Sup. Ct. 544, 34 N.Y.S. 801 (1895) (unsigned verification on tax readjustment application); *Currie v. Golconda Mining & Milling Co.,* 157 N.C. 209, 72 S.E. 980 (1911) (unsigned verification on complaint).

Additional authority for our position is found in S. Phillips, *Mechanics' Liens* § 366, at 638–39 (3d ed. 1893):

What constitutes a sufficient verification of the notice or claim has been several times decided. Thus, the signature

of a claimant, appended to his statement, and the certificate of the clerk of the court that he made oath to the accompanying affidavit, is a substantial compliance with a statute which demands that the "statement shall be verified by oath," although the claimant fail to sign the affidavit, as the statute only required that the statement shall be verified by oath. . . . A law requiring the lien statement to be verified by oath of the claimant does not require him to sign it.

(Footnotes omitted.)

We are convinced that the requirements of the statute have been substantially complied with. Indeed, as the *Dorsey* case points out, such affidavits should be liberally construed in the absence of fraud or other suspicious circumstances. *Dorsey*, at 513; *First Nat'l Bank v. Oppenheimer,* 123 Wash. 290, 212 P. 164 (1923). The absence of the signature, and the misplaced notary's signature, in these circumstances appear to be little more than a scrivener's error.

Finally, Blumhardt claims that Perkins improperly signed the lien claim as Fircrest's "Registered Agent." He argues that this fails to show Perkins' authority to act for Fircrest. We disagree. The statute requires only that the claim be "signed by the claimant, or by some person in his behalf". RCW 60.04.060. Nothing in the record suggests that Fircrest did not comply fully with this requirement.

The parties have all requested attorney's fees on review and have complied with the requirements of RAP 18.1. RCW 60.04.130 leaves attorney's fees and costs to the discretion of the trial court. In view of the meritorious nature of this appeal, and the fact that both sides have attempted to persuade this court to the value of their position in good faith, we decline to award fees and costs.

The order of the trial court granting respondents' motion

for partial summary judgment and denying Fircrest's motion for summary judgment is reversed.

WILLIAMS and CORBETT, JJ., concur.