[No. 16136. Department One. March 22, 1921.]

## H. E. WOOLEY, *Respondent*, v. ARCHIE CHANDLER, *Appellant*, FRANCES G. FRISBY *et al.*, *Defendants*.[1]

PRINCIPAL AND AGENT (36½)—POWERS OF AGENT—IMPLIED AUTHORITY—NEGOTIABLE INSTRUMENTS. Where an employee, representing himself as purchaser of his employer's business, borrows money in the trade name of the employer and indorses and deposits the check for the loan in the same manner, the remedy of the lender, in the absence of proof that the employee had borrowing powers or that the money went to the credit or account of the firm, would be against the employee alone.

SALES (176)—CONDITIONAL—FILING—CONSTRUCTIVE NOTICE TO CREDITORS. A conditional sale contract of a business, duly recorded in the proper office, is constructive notice of the state of the title to the business.

FRAUDULENT CONVEYANCES (14)—SALES IN BULK—STATEMENT TO CREDITORS—OMITTING DISPUTED CLAIM. The purchaser of a garage business, who demands and receives a statement of the actual creditors of the concern, cannot be held liable under the bulk-sales law for the omission therefrom of a disputed claim, consisting of a loan to an employee who had falsely represented himself as owner of the business.

Appeal from a judgment of the superior court for King county, Allen, J., entered May 22, 1920, upon findings in favor of the plaintiff, in an action on a promissory note, tried to the court. Reversed.

*J. Grattan O'Bryan*, for appellant.

*Grinstead & Laube*, for respondent.

[1]Reported in 196 Pac. 643.

HOLCOMB, J.—The respondent sued upon a promissory note for two hundred and twelve dollars executed and delivered to, and in favor of, respondent, by William G. Flynn, who signed the note: "Mt. Baker Park Garage, Wm. G. Flynn."

The complaint alleges that the defendant Flynn and Frances G. Frisby were together in operating the garage under the name of the Mt. Baker Park Garage, and judgment was prayed against each defendant for the amount of the note and interest.

A writ of garnishment was issued directed to appellant, and with that as a basis, service of process was made by publication upon the defendants Flynn and Frisby. They failed to appear, and default and judgment were entered against them. Appellant, the garnishee defendant, answered that he was not indebted to, and had no property of, either defendant Flynn or Frisby. Respondent traversed the answer, stating that the defendant firm Frisby and Flynn owned and operated the garage and that they became indebted to the respondent on the note set forth in the complaint, and that on July 17, 1919, the defendants undertook to sell the garage and all its stock, and that appellant undertook to purchase the same without complying with the bulk-sales act, and that appellant knew of the indebtedness of defendants to respondent, and paid the purchase price of the garage to defendants, and failed to pay any of it to respondent or see that the note of respondent was paid, and that the sale was void.

The facts show and the court found that Mrs. Frisby was the sole owner of the garage, and that Flynn was hired by her and was in charge. The court found that respondent loaned the Mt. Baker Park Garage the two hundred and twelve dollars; that Flynn gave his note for and on behalf of the garage; that the note was not

paid; that Mrs. Frisby made a statement of creditors in compliance with the bulk-sales act, and omitted therefrom the claim of respondent; that appellant had knowledge, or reasonable cause to believe, that there was an indebtedness due from the garage to respondent, and disbursed the entire purchase price of the garage without applying any portion of it to the payment of the indebtedness to respondent herein, and without making any inquiry or efforts other than to receive the affidavit to ascertain whether the indebtedness was actually due respondent. From these findings, the court concluded that respondent was entitled to a judgment against each of the defendants and the appellant for the amount of the note, less an offset of an indebtedness due from respondent to the defendants, and judgment was entered accordingly.

Under five assignments of error appellant urges two questions to secure a reversal of the judgment against him:

First: Was the note in suit an indebtedness of the defendant Frisby and required to be set forth in her statement of indebtedness to comply with the bulk sales act?

Second: Defendant Frisby having made her statement of creditors of the business in compliance with the bulk sales act, and refusing to put therein the name and claim of the respondent, was appellant, under the circumstances, justified in paying over to her the balance of the purchase price of the garage?

The court correctly found upon the evidence that Mrs. Frisby was the owner of the garage; that Flynn was her employee as agent and manager in charge; but the court did not find, and there is no evidence to show, that, as agent and manager for Mrs. Frisby, Flynn had any borrowing powers.

From respondent's own testimony it appears that he dealt with Flynn, not as agent, but as the principal. He testified that on the day he loaned the money to Flynn, Flynn told him that he had bought the garage and was to pay about three thousand dollars for it, and that he needed about two hundred and twelve dollars with which to purchase oil. It is in the record that the two hundred and twelve dollars did not appear to have been so invested, and therefore it must be concluded that this money was not obtained or used to pay legitimate demands, and that the owner of the business did not have the benefit of the money, even though it appears that the check received from respondent for the amount of the loan was deposited by him in a bank with the following endorsement stamped on the back thereof with a rubber stamp:

"997.  Pay to the order of the Dexter Horton Nat'l Bank of Seattle, Wash.  Mt. Baker Park Garage, Wm. G. Flynn."

The trial court attached great importance to the nature of this endorsement and deposit, saying that it appeared from that that the money went into the account of the Mt. Baker Park Garage, which was, as found by the court, owned solely by Mrs. Frisby, and that therefore she received the benefit of the money, and cannot escape liability.

Reliance is placed on our cases holding to the effect that, even though an agent has no borrowing powers, retention by the principal of the benefits of a loan procured by an agent, even without authority, ratifies and binds the principal, citing *Allen v. Olympia L. & P. Co.*, 13 Wash. 307, 43 Pac. 55; *Dexter Horton & Co. v. Long*, 2 Wash. 435, 27 Pac. 271, 26 Am. St. 867; *Tootle v. First National Bank*, 6 Wash. 181, 33 Pac. 345; *Bannatyne v. MacIver*, 3 Ann. Cas. 1143.

But in all these cases the money was used or applied for the benefit of the principal with knowledge and acquiescence. In the *Bannatyne* case, *supra,* an English case, the opinion stated the principle long before laid down by Lord Selborne in *Blackburn Building Society v. Cunliffe, Brooks & Co.,* 22 Ch. D. 61, to the effect that:

". . . . persons who have no borrowing powers cannot, by borrowing, contract debts to the lenders, may be shown in this way. The test is, has the transaction really added to the liabilities of the company? If the amount of the company's liabilities remains in substance unchanged, but there is, merely for the convenience of payment, a change of the creditor, there is no substantial borrowing in the result, so far as relates to the position of the company. Regarded in that light, it is consistent with the general principle of equity that those who pay legitimate demands, which they are bound in some way or other to meet, and have had the benefit of other people's money advanced to them for that purpose, shall not retain that benefit so as, in substance, to make those other people pay their debts."

And in the case cited, the court said:

"The money was paid into the principal's bank account, and from there a part of it was checked out to pay liabilities of the principal. The court ordered an accounting and held the principal liable for the amount only which was paid on its liabilities."

There is no such proof in this case. It cannot be assumed that because Flynn endorsed the check received from respondent, under the name of the "Mt. Baker Park Garage, Wm. G. Flynn," that it went into the account of the Mt. Baker Park Garage, Frances G. Frisby.

There is no dispute but that Mrs. Frisby had purchased the garage from one Lyon some months before on a conditional bill of sale contract, which was, at the

time of the transaction between the respondent and Flynn, on file and of. record, and had been for some time, in the office of the county auditor of King county, which was therefore constructive notice to respondent of the condition of the title at that time. *Kasper v. Spokane Merchants' Ass'n,* 87 Wash. 447, 151 Pac. 800.

The name "Mt. Baker Park Garage" was a mere business name. There was no corporation nor partnership of that name. It is a name under which Mrs. Frisby did business. Flynn had operated the same for her for some time, and respondent had dealt with Flynn in the business of the garage and made payments for supplies and repairs to him. At the particular time of the financial transaction between respondent and Flynn, Flynn then informed respondent that he had become the owner of the garage. Respondent therefore extended credit to him, and not to the real owner, and he refused to take any chattel security from Flynn for the indebtedness.

When appellant began negotiations on July 15, for the purchase of the garage from Mrs. Frisby, he took the trouble to inform respondent of that fact, mentioning that he understood that respondent had a note against Flynn or against the garage. Respondent contends that, because he advised appellant that he had a note against Flynn, and signed by Flynn as the Mt. Baker Park Garage, appellant was bound to require that the bulk-sales statement of creditors and affidavit should include the name of respondent, and the amount of his claim. Appellant did require of his vendor a statement of all the creditors and the amounts of their claims, and their addresses, as required by Rem. Code, § 5296. That statement included debts and claims amounting to about one thousand four hundred dollars which were paid by appellant out of the purchase

price, and the balance of the purchase price was then, on July 17, paid to Mrs. Frisby.

When appellant on July 15 notified Mrs. Frisby that respondent had a note against Flynn for the Mt. Baker Park Garage for two hundred and twelve dollars, she at once denied any liability therefor, denied that Flynn had any authority to create any indebtedness on her behalf, or to execute any promissory notes, and positively refused to include respondent's claim in the statement of creditors required by the bulk-sales law.

Appellant thereafter, being bound by the fact of ownership of the garage, that Mrs. Frisby was the sole owner, and that Flynn had no interest in it whatever, and that appellant was buying it from Mrs. Frisby, required no further statement of creditors from Mrs. Frisby than her own debts incurred in operating the garage, and completed the purchase on July 17. This, we think appellant justified in doing. He required all that the statute requires. Respondent's note was then past due. It matured on July 10, 1919. He gave respondent an opportunity to present his demand to Mrs. Frisby if she and Flynn were partners, or if Flynn had authority from her to contract the debt and give a note therefor. Respondent let two days go by, and made no attempt to press his claim against Mrs. Frisby. It is very clear that appellant committed no fraud against respondent, nor did Mrs. Frisby.

This case is not one where actual creditors of a concern are wilfully omitted by the vendor upon the sale of its business in bulk, and is not governed by any of our cases, or those of other jurisdictions, upon such situation. Flynn was the debtor, but not the vendor. It is simply a case of extending credit to the wrong person, Flynn, who apparently absconded without paying his debts. Had he been a proprietor or partner in

the business, making a loan by respondent under the circumstances shown might have been construed as a loan to the business and protected under the bulk-sales law; but that is not the case, and the only person whom respondent could hold under the bulk-sales law under the facts shown in this case would have been Flynn.

Under the foregoing facts and the law, we can see no possibility of holding appellant liable for Flynn's debt to respondent.

Judgment reversed.

PARKER, C. J., MACKINTOSH, BRIDGES, and FULLERTON, JJ., concur.