SORENSON v. HOWELL, Sheriff et al.*
(No. 1209; Dec. 21, 1925; 241 Pac. 1068.)

ATTACHMENT—APPEAL & ERROR—ESTOPPEL—RIGHT OF OWNER AS
AGAINST JUDGMENT CREDITOR OF ANOTHER—RULE WHERE FRAUD
SHOWN.

1. Evidence, in action for wrongful attachment, *held* to sustain finding that plaintiff did not notify or claim to attaching officers that she was owner of property or business attached.

2. Trial court's finding of fact on conflicting evidence, supported by evidence, is binding on appeal.

3. Though wife was owner of business conducted in trade name where evidence of debt was note signed in trade name by her husband with her acquiescence, and by her also as joint maker, and bank attaching property had no knowledge that she owned business, *held* that she was estopped from claiming ownership as against claim of plaintiff in attachment.

4. In absence of fraud, owner of property, who permits another to appear as such, is not estopped to assert ownership as against judgment creditors of latter, since judgment creditor takes only title of debtor.

5. To prevent fraud, owner of property may be estopped to assert title in attachment suit by reason of his acts or declarations concerning or relating to ownership.

6. In absence of fraud, an attaching creditor takes only such title as debtor had at the time, unless he was misled by apparent ownership of property, attached, and has given credit on faith of such ownership.

*See Headnotes (1) 6 C. J. p. 529 n. 59; 30 C. J. p. 1028 n. 52;
(2) 4 C. J. p. 884 n. 37; 6 C. J. p. 529 n. 59; (3) 21 C. J. p. 1113
n. 52; (4, 5) 6 C. J. p. 377 n. 58; 21 C. J. p. 1179 n. 24, 25; (6)
6 C. J. p. 365 n. 38; p. 366 n. 39; 21 C. J. p. 1179 n. 25.

Appeal from District Court, Weston County; Volney J. Tidball, Judge.

Action by Lou Sorenson against Charles A. Howell, Sheriff of Weston County and others. Judgment for defendants and plaintiff appeals.

*Thomas M. Fagan* and *Camplin & Camplin* for appellant.

The fact that one owes another does not warrant the taking of debtor's goods and the closing of his business; Wellington vs. Spencer, 132 Pac. 675; Smith vs. Hilton, 41 So. 747; defendants were trespassers; Drake on Attachment, Sec. 185b; Lyman vs. Holmes, 92 Atl. 829; a valid writ of attachment was requisite; Cheesman vs. Fenton, 13 Wyo. 449; Drake 185b; Hagar vs. Hass, 71 Pac. 822; a joint answer precludes separate rights; Reithman vs. Godman, 46 Pac. 685; defendants failed to prove that Sorenson was indebted to plaintiff bank at the time of attachment; Simpson vs. Voss (Kans.), 1 Pac. 601; Huey vs. Brimmer (Kans.), 58 Pac. 485; Bartless vs. Cheesebrough (Nebr.), 49 N. W. 360; Sears vs. Lydon (Idaho), 49 Pac. 122; notification of ownership by a third person after levy is sufficient; Cole vs. Edwards (Nebr.), 72 N. W. 1045; Reithman vs. Godsman (Colo.), 46 Pac. 684; plaintiff's testimony as to her possession and title was clear, and the findings against her were contrary to law; Smith vs. McCraine, 82 S. E. 307; Hagar vs. Haas, 71 Pac. 822; value of the goods were fixed at $3209.60 by inventory and appraisement which governs; Green vs. McCracken (Kan.), 67 Pac. 857; Roberts vs. Burr (Calif), 67 Pac. 46; the attachment bound the property from time of service; 3164 C. S.; a second attachment, even if valid, was no defense to a former invalid attachment; Geller vs. Rosenfield, 123 N. Y. Supp. 628; Drake on Attachment,

Sec. 185c; Fairbanks vs. Kent (Calif), 62 Pac. 707; neither attachment authorized a levy upon property of a third person; Bank vs. Co., 44 S. E. 816; Epps & Mattos vs. Hazelwood, 89 S. W. 809; Walker vs. Wonderlick, 33 Nebr. 504; a writ issued without giving the required undertaking is contrary to law; 6119, 6122 C. S.; Simpson vs. Voss, supra; Drake 185; a clerk is without authority to insert a return date, contrary to statute; 6122 C. S.; Geiser vs. Guggenheim, 21 S. E. 475; and cases cited; attachment being ancillary to the main action it cannot exist beyond final judgment; Kaylor vs. Co., 87 S. E. 551; Marten vs. Bank, 135 Pac. 885; an amendment changing the defense is prohibited by statute, 5707 C. S.; Lellman vs. Mills, 15 Wyo. 166; Riordan vs. Horton, 16 Wyo. 369; and cases cited; a defendant pleading jointly is not entitled to a separate defense; Deitsch vs. Wiggins, 1 Colo. 299; Reithman vs. Godsman, supra; the plea of estoppel is insufficient; Hallock vs. Bresnahen, 3 Wyo. 73; 8 Enc. Pl. & Pr. 9, 10; Carstensen vs. Brown, 26 Wyo. 364; and cases cited; defendants were trespassers; Kirby vs. Union Pac. (Colo.), 119 Pac. 1050; and liable for damages; Drake (5th ed.) 196; estoppel will not support an invalid writ; Stephens vs. Head, 35 So. 565; Weatherington vs. Smith, 109 N. W. 381; Cheesman vs. Fenton, 13 Wyo. 449; trespassers cannot question the title of others; Simpson vs. Voss, supra; plaintiff was not a party to either the writ or the suit and the issuance of attachment was without jurisdiction; Cook vs. Higgins, 71 Pac. 269; Carstensen vs. Brown, 26 Wyo. 364; estoppel was not established; 21 C. J. 1226; 10 R. C. L. 699; the following authorities are presented in support of specifications of error numbers 1 to 40, inclusive; 4974, 6117-22, 5707 C. S., 6 C. J. 493, 503, 417; 21 C. J. 1140; Williams vs. U. P. Ry., 20 Wyo. 402; Riordan vs. Horton, 16 Wyo. 369; Cheesman vs. Fenton, 13 Wyo. 448.

*E. C. Raymond* for respondent.

The action was for conversion and required plaintiff to recover upon the strength of her own title; Union Stock Yard Co. vs. Mallory & Zimmerman, 48 Amer. St. Rep. 341, 28 Cyc. 2048; in this plaintiff failed; she testified that the property belonged to her husband; the proof indicated that the business was conducted in the name of Niobrara Motor Company, and that it carried an account at the Osage State Bank. Mrs. Sorenson never claimed any interest in the property until after the goods had been attached; the testimony shows conclusively that Carl Sorenson proved himself by word of mouth and printed matter to be the owner of the business; the trial court so found, and there is sufficient proof to support the findings, which under the rule, will not be disturbed, even if there be conflicting evidence. Amendments to pleadings during the trial are discretionary, and in the absence of abuse of discretion will not be interferred with; 5707, 5860 and 5861 C. S., C., B. & Q. vs. Pollock, 16 Wyo. 321; the money was borrowed by Carl Sorenson on the credit of Niobrara County Motor Company and appellant admitted that it should be paid.

POTTER, Chief Justice.

This is an action brought in the district court of Weston County for damages for the alleged wrongful seizure of personal property of the plaintiff, Lou Sorenson, under a writ of attachment issued in an action brought in said court by the First National Bank of Newcastle, Wyoming, against "Carl Sorenson, doing business as Niobrara Motor Company." The sheriff of said county, Charles A. Howell, the surety upon his official bond, the U. S. Fidelity and Guaranty Company, and the plaintiff bank in said attachment suit, were made defendants. Upon a trial of the cause to the court without a jury, there was a judgment for defendants and each of them upon a general finding in their favor. The cause is here upon direct appeal, a pro-

cedure authorized by statute for bringing a cause to this court for review independent of a proceeding in error.

There is included in the specifications of error a statement that the court erred in failing to comply with the plaintiff's request for a separate statement of conclusions of fact and law. But that matter does not seem to be discussed in appellant's brief and must therefore, under our rules, be deemed to have been waived. But the request for such a statement does not appear to have been made except in a brief submitted to the trial court upon its request of both parties that briefs be filed, which would probably be insufficient as a request for separate statement in writing of the conclusions of fact and law. See First National Bank v. Citizens State Bank, 11 Wyo. 32, 70 Pac. 726, 100 Am. St. Rep. 925.

Some contentions are made in appellant's brief relating to the attachment procedure which we think will be unnecessary to consider. Plaintiff was not a party, by her individual name at least, to the attachment suit, and if by reason of her relationship to the business of Carl Sorenson, then her husband, or the trade name above mentioned, she might be supposed to have had some interest in that suit, it sufficiently appears, we think, that all disputed questions relating to the attachment procedure were disposed of in the attachment suit, which finally resulted in a judgment for the bank, the plaintiff therein, against the defendant Sorenson, sued as doing business as aforesaid, and an order for the sale of the attached property. And it appears also that such sale was had and the property thereby disposed of. The case was before this court on appeal and the judgment was here affirmed. Bank v. Sorenson, 30 Wyo. 136, 217 Pac. 948. If the plaintiff was the owner, as she alleges in this action, and as such entitled to the possession of the attached property, as against any claim of the sheriff or the attachment creditor under the writ, then any alleged or supposed defects in the attachment proceedings would be immaterial.

The attached property consisted of a stock of automobile accessories and supplies, located at Osage, in Weston County, comprising the stock of merchandise of the business conducted at that place in the name of Niobrara Motor Company, which was established some time in April, 1920, by moving or shipping from Lusk, Wyoming, in Niobrara County, a part of the stock of a business conducted there in the same trade name. The plaintiff claims to have purchased that business at Lusk and its entire stock with her own money and in her own name in May, 1919, together with said trade name, from a Mr. Rogers and Mr. Boyd, who had previously owned and conducted the business under the same name. Mr. Rogers was a witness in this action, and testified that he was vice-president of the First National Bank at Lusk, had previously been engaged in the garage business and automobile supplies there, under the name of the Niobrara Motor Company, and that he sold the same with the trade name, building and stock to the plaintiff, who made the initial payment of ten thousand dollars by her own check, which was introduced in evidence and is in the record here. Further, he testified that the transaction took place at Lusk and that the approximate total value of the accessories and supplies on hand at that time was $12,000. Also that he knew that some of such supplies and accessories had been moved away by the plaintiff at some time in the next year, which would be 1920; that he knew also that it included some of the material that he had sold her; that he knew that Mrs. Sorenson was the owner after the business was sold to her; that he took a mortgage from her, which was signed by her, and that he conveyed the real property by deed to her.

That evidence is not disputed. And there is nothing to show any actual transfer of her interest in said business or the property thereof to anyone up to the time of the levy of the writ of attachment aforesaid, except by sales

from time to time in the usual course of business. It appears, however, from the evidence in this action that Carl Sorenson was in charge of the business at Osage; that he opened the account at the bank at that place in the trade name aforesaid, and that all checks upon that account were signed in that name by him or by a clerk in the establishment, authorized by him to draw checks upon the account. The business was conducted there until the levy of the writ of attachment on or about October 26, 1920. The cashier of defendant bank, who appears to have represented that institution in all of its transactions with the Niobrara Motor Company, testified that he did not know prior to the commencement of the attachment suit that Mrs. Sorenson had any connection with the business or with the ownership of the property, and until October 4, 1920, a date to be hereafter referred to, he did not even know that Carl Sorenson had a wife. It appears also that certain Niobrara Motor Company letter or bill-heads had been printed containing the name of Carl Sorenson printed thereon as "proprietor." But Mrs. Sorenson testified that they were printed without authority and that she never allowed them to be used in the course of the business, although one sheet of such paper, as used, is in evidence. She testified, however, that her husband worked for her in and about the conduct and management of the business. And, as will presently be stated in detail, she admitted knowledge of some of the transactions involved in this matter and that she had consented to and ratified the same. So the fact is thus established that Carl Sorenson was at least plaintiff's agent, and as such entrusted with the possession and general authority to conduct and transact the business of the concern.

Certain of the pleadings, attachment proceedings and journal entries in the suit in which the property was attached are in the record here. The suit appears to have been commenced on the 25th or the 26th of October, 1920.

The affidavit for attachment seems to have been sworn to on October 25, and the return of the writ shows that it was received by the sheriff on October 26. The suit appears to have been brought for the conversion of an automobile acquired from the defendant in that action by a bill of sale and then redelivered into the possession of the defendant for the plaintiff's use and benefit. It was alleged in the amended petition upon which that action was tried that the bill of sale for said automobile was intended to secure to the plaintiff the payment of all indebtedness then existing or thereafter accruing from the defendant to the plaintiff bank, and that it was given to the bank at the same time that a certain promissory note was executed and as collateral security therefor.

That promissory note is set out in full in said amended petition, showing it to be a note dated October 4, 1920, for the sum of $1400, payable in thirty days after date to the said First National Bank of Newcastle, with interest at 10 per cent per annum from date until paid, and with a provision for attorneys fees; that it was signed ''Niobrara Motor Company. Carl Sorenson. Lou Sorenson.'', and bore endorsements upon the back, showing a payment on October 26, 1920, of $360 upon the principal, leaving a balance due thereon of $1040, and of interest to October 25, 1920, of $7.39. The note is in evidence here. The petition in that suit alleged that the reasonable value of the car was $1600, and that the defendant therein named was indebted to the plaintiff bank on account of said conversion in the sum of $1246.15 with interest from date of the filing of said amended petition, and judgment was prayed for that amount and costs. At the time of the bringing of the suit the said note was not quite due, which, perhaps, may be considered as a reason for alleging the conversion of the car given as security instead of the promissory note itself as the cause of action. At any rate, the final judgment entered was for the amount of the debt, evidenced

by said note, with interest, but within the value of the car alleged and found to have been converted.

From the evidence in this action it appears that said $1400 note was given in renewal of two other notes, viz: one note for $400 dated at Newcastle, Wyoming, August 26, 1920, payable on September 10, 1920, and signed as follows: Niobrara Motor Company By Carl Sorenson. Carl Sorenson. A note for $1000 dated at Newcastle, Wyoming, August 26, 1920, and due September 10, 1920, signed in the same manner, that is to say, in the name of Niobrara Motor Company by Carl Sorenson and by Carl Sorenson individually. The circumstances of the renewal of said notes and the signing of the renewal note by Lou Sorenson, the plaintiff in this action, is explained in the testimony, which need not be repeated here except to say that it shows that Mrs. Sorenson voluntarily signed the said $1400 note, and that she testified that the name ''Niobrara Motor Company'' was signed thereto by Carl Sorenson, by and with her knowledge and consent.

Thus, it appears that the debt which the bank was trying to collect through the aid of the attachment suit was the debt not only of Carl Sorenson, but of Mrs. Sorenson also, and was contracted in the trade name of the Niobrara Motor Company. This is made more evident by the uncontradicted testimony of the cashier of the defendant bank here, who says that the credit was extended to the Niobrara Motor Company and charged to that concern upon the books of the bank. It appears also that the plaintiff in this action seems to have had some knowledge of the car aforesaid, and the transaction concerning it. For the cashier of the defendant bank here, the plaintiff bank in the attachment suit, testified in this action that when about to bring the attachment suit he telephoned to Lusk to talk with Carl Sorenson to notify him that there was a party at Osage threatening to attach his stock but that Mrs. Sorenson answered the phone and informed him that Mr. Sorenson was not there; that he then told her of the

danger of attachment at Osage as reported by the cashier of the bank there, and requested her to transfer a balance in the Osage bank, which was consented to and which constitutes the credit aforesaid upon the principal of the $1400 note; and that during that conversation he asked her where the "Jones car" was (the car alleged to have been converted being described as a Jones car), and she said it was on the floor, "and I asked her where on the floor, I supposed she meant the building floor, and finally she said it was sold some time ago. I was told also that she would be here (Newcastle) in a day or so. I asked her to stop and she said that she would stop at Newcastle on the way back, but she would go to Osage first." He testified in that same connection that she did not then inform him that she was the owner of the Niobrara Motor Company, or of the property of that concern at Osage, and not until a day or two following the levy of the attachment, when she came to Newcastle, at which time an attempt at settlement was made, but that while Mrs. Sorenson was willing to pay the entire amount of the debt, she refused to pay any of the expenses of the attachment suit. And she also testified in this action that she was willing and had intended to pay the debt.

At the time of levying upon the property under the attachment writ, the plaintiff was at the place of business and a copy of the writ was served upon her there. Mr. Carl Sorenson was not there at the time, nor at any time afterwards so far as disclosed by the testimony, and he was not a witness in this action. The plaintiff testified that she then notified the sheriff, or the deputy who served her with the writ, that she was the owner of the property and would not recognize the attachment; and she is corroborated therein by one witness, a salesman for a creditor of the business, who was arranging for taking back some of the merchandise previously sold and delivered there. But the officer and his assistants each denied that the plaintiff made any such statement. Indeed, it appears

in the transcript of her testimony in the record here that she told the officer at that time that Carl Sorenson was the owner of the property. We think, however, that may be regarded as an error either in the reporter's notes or the transcription thereof, in view of what appears in the remainder of her testimony which, with respect to the ownership, shows that she was claiming herself to be the owner. Mr. Howell, the sheriff, who was there at least once during the day of the service of the attachment, testified that the plaintiff did not, in his presence, state that she was the owner of the goods then being attached, and that she had not since that time stated to him or in his presence that she was such owner or the owner of the goods handled by the Niobrara Motor Company. Mr. Miller, the deputy sheriff, also testified that Mrs. Sorenson did not say anything with reference to her being the owner of the Niobrara Motor Company, nor make any claim to the goods that were being attached. And one of the appraisers, Mr. Gettes, also testified to the same effect. A finding, therefore, by the trial court that the plaintiff had not notified or claimed to the attaching officer or his asistants that she was the owner of the property or of the business of the Niobrara Motor Company would be sustained by the evidence, and this court would be bound thereby, in view of the conflict aforesaid. And the fact that the court so found may be assumed, under its general finding. The fact that she had not previously informed the attaching creditor of her claim of ownership has already been mentioned.

The court might properly have found also that the plaintiff was in fact the owner of the business of the Niobrara Motor Company and of its stock in trade, including the attached property. But a further finding in that connection would be justified by the evidence that the business was being conducted at Osage in the name of the Niobrara Motor Company by Carl Sorenson, the husband

of the plaintiff, with her authority and consent. And that, in connection with the fact that the debt to the bank was contracted for said concern under its trade name, and consented to and ratified by the plaintiff, and the claim of ownership now made by the plaintiff to sustain her action for damages, would disclose this peculiar situation: That, while the debt was contracted under the trade name by her husband with due authority, and consented to and ratified by her, and for which her property might be held liable, she is claiming the right to recover the value of the property taken under the attachment writ and other alleged damages because it was taken in a suit brought against her said agent, described by name and as "doing business as Niobrara Motor Company."

In a broad sense, therefore, the attachment suit was brought against the business concern to which credit was extended, and which, admittedly, owed the debt, and was held liable in the attachment suit upon the cause of action alleged. But since the name thereof did not represent a corporation, or any other distinct entity, but merely an individual who may have adopted it for the purpose of carrying on the business, it was necessary under our practice to name the person so engaged in the said business. See Kelly v. Eidam, 231 Pac. 678. And the person so named was the duly authorized agent of the plaintiff in charge of business and property. Not only that, but the property taken formed a part, if not all, of the remaining stock in trade of said business. And the only complaint that would seem reasonably to be open to the plaintiff would be that she, the principal, was not named as the individual defendant conducting the business. That would seem to afford no just ground for the recovery by her of damages for the taking of the property aforesaid under the attachment writ. The taking thereof as the property of the defendant in the action, though her agent and in possession thereof, and though she and her business were also liable

for the debt, might not, perhaps, be sustainable as in a suit to enforce her personal liability. We may suppose that there might be a technical objection to that. But the taking under the writ may be sustained upon another very clear ground. And we need go no further than to apply the applicable rule of estoppel, which has its foundation in fraud, or is intended to prevent fraud.

It is true, in the absence of fraud, an owner of property who permits another to appear as owner thereof is not estopped to assert ownership as against judgment creditors of the latter, since, where there is no fraud, a judgment creditor takes, as a rule, only the title of his judgment debtor, and cannot become an innocent purchaser of the property sold under judicial process. 21 C. J. 1179, § 181; Hartford v. Stout, 102 Wash. 241, 172 Pac. 1168; R. Piel Gin Co. v. Ind. F. Gin Co., Tex. Civ. App., 257 S. W. 630; Culp v. Kiene, 101 Kan. 151, 168 Pac. 1097. But, to prevent fraud, the owner may be estopped to assert a title in an attachment suit by reason of his own acts or declarations concerning or relating to the ownership. 6 C. J. 377, § 838; Bank v. Frantz (Wyo.), 239 Pac. 531; 21 C. J. 1179, § 182. Thus it is said in the text last cited that a wife who knowingly permits her husband to deal with her personal property as his own will be estopped to assert her ownership as against persons who have dealt with the husband in reliance upon his apparent ownership or authority. So that the rule, with the exception, may be thus stated: That in the absence of fraud, an attaching creditor takes only such title as the debtor had at the time, unless he has been misled by an apparent ownership of the property attached, and has given credit on the faith of such ownership. Travelers Ins. Co. v. Mayo, 103 Conn. 341, 130 Atl. 379; Waterman v. Buckingham, 79 Conn. 286, 64 A. 212; Rinchey v. Stryker, 28 N. Y. 45, 84 Am. Dec. 324; Fisher v. Kelley, 30 Ore. 1, 46 Pac. 146; 4 Cyc. 765, 767; Hudelson v. Sanders-Swofford Co., 111 Ore. 600,

227 Pac. 310; Keefe v. Cropper, 196 Ia. 1179, 194 N. W. 305. It is said in Cyc at the last cited page of that work that under a general issue in such an action as this the defendant may show that the goods did not belong to the plaintiff, but did belong to the attachment defendant, and, under proper allegations, "may show fraud affecting the attachment creditor."

The use of the trade name, as shown in this case, was no doubt largely responsible for the situation growing out of the transactions or dealings between the defendant bank and the concern known as the Niobrara Motor Company, especially in view of the apparent ownership of Carl Sorenson, the plaintiff's husband, in the conduct of the business. The signing by the latter of the obligations in the trade name, with apparent authority to do so, would seem to be sufficient ground for belief by the creditor that it was his business. And it is shown that the bank entertained that belief and acted upon it in dealing with him and with the concern. The unrestricted use by individuals of assumed names, corporate in form, must have been found productive of fraud. For statutes have been passed in several states forbidding the conducting of any business under an assumed or fictitious name unless after complying with certain legislative directions, which usually include the filing or recording of a document setting forth the names of the owners of the business. See Lamb v. Condon, 276 Pa. 544, 120 Atl. 546; Connellee v. Oil Belt Pub. Co. (Tex.), 263 S. W. 633.

An illustrative case, in point only because of the use of a trade name and the management of a business by an agent, is Wooley v. Chandler, 115 Wash. 86, 196 Pac. 643. Frisby, it appeared, was the sole owner of a garage and one Flynn was hired by her and was in charge; the business was conducted under the name of the Mt. Baker Park Garage, and a loan was made as if to that concern for which Flynn gave a note, signing it for and on behalf of

the garage, but stating to payee that he had bought the garage and needed the money with which to purchase oil; the payee knowing that the garage had been owned by Mrs. Frisby and that Flynn was the agent in charge. Frisby and Flynn, as alleged, thereafter undertook to sell the garage and business. The action was upon the note, and the purchaser at said sale was made a garnishee in the case upon a charge that he had paid the purchase price to the former owners without paying any part to the plaintiff or requiring that plaintiff's note be paid; it being claimed that the garnishee was liable under the Bulk Sales Act, having known of the said indebtedness to the plaintiff, and Mrs. Frisby having refused to include the note in her statement of creditors under the said Bulk Sales Act. It was held that the note was not a debt against Mrs. Frisby as owner of the garage, since the court did not find that Flynn had any borrowing power as agent for Mrs. Frisby, and it appeared from plaintiff's testimony that he dealt with Flynn as principal and not as agent, because of the statement of the latter that he had bought the garage, and also that the money was not obtained or used to pay the legitimate demands of the garage and that the owner of the business, Mrs. Frisby, did not receive the benefit of the money. The significance of the decision as persuasive authority here is that because of the said facts the garnishee was held not to be liable.

The situation here is entirely different. The plaintiff was not only the owner of the business but the debtor also as such owner, and the evidence of the debt was a note signed in her trade name by her husband with her knowledge and acquiescence and by her also as joint maker. And the bank is not shown to have had any knowledge that she owned the business or any interest therein until after the attachment suit had been commenced. She must be held, under the circumstances, to be estopped from claiming the ownership of the property as against the claim of the plaintiff in the attachment suit. Schraeder,

Sheriff, v. Mitchell, (Colo.) 215 Pac. 147; Union Brew. Co. v. Inter-State Bank, 240 Ill. 454; 88 N. E. 997; Reid v. Miller, 205 Mass. 80; 91 N. E. 223; Merten v. Schlemme, 68 N. J. Eq. 544; 59 A. 808; Warner v. Watson, 35 Fla. 402; 17 So. 654; Early v. Wilson, 31 Nebr. 458; 48 N. W. 148; Arena v. Bank of Italy (Cal.), 228 Pac. 441. Any other conclusion would, in our opinion, result in a very clear miscarriage of justice. The judgment will be affirmed.

*Affirmed.*

BLUME and KIMBALL, JJ., concur.