[No. 277-40887-1. Division One. February 24, 1970.]
Panel 2

WILLIAM J. MCALLISTER *et al., Respondents,* v. PIER 67, INC., *et al., Appellants.*

*Guttormsen, Scholfield, Willits & Ager* and *Douglas K. Haughton,* for appellants.

*Wettrick, Toulouse, Lirhus & Hove* and *Arnold J. Barer,* for respondents.

Horowitz, A. C. J.—This is an appeal from a judgment in favor of the plaintiff husband (McAllister) as guarantor under a written guarantee for an amount paid by him on June 14, 1966, in reduction of loan indebtedness of the defendant (Pier 67, Inc.) guaranteed. The defendant, Pier 67, Inc., appeals, raising two questions. For the reasons later set forth, we affirm.

McAllister was one of the original promotors, a director and a shareholder of Pier 67, Inc. Late in 1961, while plaintiff was a director, that corporation needed financing to build a motel known as Edgewater Inn, Seattle. To obtain such financing, the Canadian Imperial Bank of Commerce (Bank), the proposed lender, required, and McAllister at the request of Pier 67, Inc., executed and delivered to bank a written guarantee dated November 28, 1961. By that instrument McAllister guaranteed "payment to the Bank (forthwith after demand therefor as hereinafter provided)

of such liabilities as the customer . . . may incur or be under to the Bank . . . ." The instrument further provided:

And the undersigned and, if more than one, each of them, agree/s (1) That the Bank may grant extensions, take and give up securities, accept compositions, grant releases and discharges, and otherwise deal with the customer and with other parties and securities as the Bank may see fit, and may apply all moneys received from the customer or others, or from securities, upon such part of the customer's liability as it may think best, without prejudice to or in any way limiting or lessening the liability of the undersigned under this guarantee.

(2) That this guarantee shall apply to and secure any ultimate balance due to the Bank, but the Bank shall not be bound to exhaust its recourse against the customer or other parties or the securities it may hold before being entitled to payment from the undersigned of the amount hereby guaranteed.

. . .

(7) That should the Bank receive from the undersigned or, if more than one, any of them a payment or payments in full or on account of the liability under this guarantee, the undersigned and, if more than one, each of them shall not be entitled to claim repayment against the customer or the customer's estate until the Bank has received payment in full; . . .

(8) That the undersigned shall make payment to the Bank of the amount of the liability of the undersigned hereunder forthwith after demand therefor is made in writing . . .

Subsequently, Pier 67, Inc. by a series of loans borrowed a total of $300,000 from the bank. The entire indebtedness matured early in 1963, and efforts to receive payment being unsuccessful, the bank on February 26, 1964, wrote off the indebtedness as a bad debt. Following the maturity of the loan indebtedness, the bank made oral demands from time to time upon the guarantors, including McAllister, for payment under his guarantee as well as against Pier 67, Inc. for the payment of its indebtedness to the bank.

On August 13, 1965, the bank, in consideration of the

deposit of additional securities and the payment of certain cash which the bank applied on the then outstanding indebtedness of Pier 67, Inc., executed a subordination agreement, which among other things provided that the bank would not take any action against Pier 67, Inc. on account of any outstanding loans until July 1, 1966. The agreement in paragraph 6 provided, however, that the bank reserved all rights and remedies against the guarantors.

Some time before June 14, 1966, McAllister learned that the bank was negotiating for the sale of Pier 67, Inc.'s loan indebtedness to a third party. McAllister, who had been meeting with the bank from time to time concerning the payment of that indebtedness, thereupon went to the bank to negotiate for his release on the guarantee. On June 14, 1966, all the guarantors, including McAllister, paid the bank a total of $30,000, the bank treating the sum so paid as a payment in full of the guarantors' liability but payment on account of the loan indebtedness owing by Pier 67, Inc. to the bank. The bank notified Pier 67, Inc. of that payment and of the credit given on the indebtedness. Pier 67, Inc., after audit by its accountants, adjusted its books accordingly to show the payment on account. Pier 67, Inc. has at all times retained the benefit of the payment so made and still does so. Of this payment, plaintiff paid $15,000, later being reimbursed by another guarantor to the extent of $7,500, but that reimbursement does not create any issue here. The bank not only applied the $30,000 upon the Pier 67, Inc. loan indebtedness, but, having been paid in full so far as the guarantors were concerned, at the same time executed and delivered to the guarantors, including McAllister, a release of their liability on their guarantee. Thereafter, the bank sold its rights on the Pier 67, Inc. indebtedness after allowing for the $30,000 credit on that indebtedness. The indebtedness of Pier 67, Inc., less credits including the $30,000 paid, is still outstanding, but with no guarantee thereon.

Pier 67, Inc. contends that McAllister has neither the right of reimbursement nor subrogation for the sum paid

by him because (1) the sum paid by the guarantors, including McAllister, was not made as payment, but solely as consideration for obtaining a release from the guarantee; (2) that the guarantors were under no obligation to make a payment when they did because the subordination agreement, in effect, extended the time of payment by Pier 67, Inc. to July 1, 1966, and (3) that the guarantors had no duty to pay until written demand, rather than oral demand, for payment was made upon them.

■ There is no reason why the parties to the guarantee could not treat the payment of $30,000 as payment in full. Indeed, the court found that the sum involved was "paid in compromise." Mr. Petrie, the bank manager, testified: "This sum of $30,000 was received as a payment by guarantors who had guaranteed the loans . . . to the bank." A payment in full by the guarantors in its very nature is both a payment upon the indebtedness and a release of the guarantors from any further liability. By the terms of the guarantee the guarantors were required to pay the indebtedness in full and under the law the parties to the guarantee without consent of Pier 67, Inc. could agree to accept any lesser sum as full payment. The objection now made is not made by the bank. Indeed, the bank credited the sum paid on Pier 67, Inc.'s loan indebtedness as it was required to do because received as payment and as it had a right to do under paragraph (1) of the written guarantee. Pier 67, Inc. itself treated the sum paid as payment because it has retained its benefits at all times without objection after learning of the payment shortly after it was made.

Nor can it be claimed that in making the payment the guarantors did so as volunteers. The bank began asserting its rights against the guarantors by oral demands on and after the maturity of the loan indebtedness early in 1963. Whatever rights the bank had were retained by the bank in its subordination agreement because of the reservation of rights against the guarantors contained there. See A. Stearns, Law of Suretyship, § 6.34 (5th ed. 1951); *Boston Nat'l Bank v. Jose*, 10 Wash. 185, 38 P. 1026 (1894). The

constraint of the guarantee was a matter continually brought to the attention of the guarantors by the bank in the form of oral demands. When, therefore, the guarantors made the $30,000 payment, then, as said in the analogous principal and surety case of *Lindblom v. Johnston,* 92 Wash. 171, 177, 158 P. 972 (1916) with reference to a right of contribution: "No payment by a surety of an obligation which can be coerced against him is voluntary in this sense." Pier 67, Inc. by relying upon the subordination agreement must be deemed to have accepted the whole thereof including its burdens and Pier 67, Inc. can scarcely complain if it is held to a condition consented to by it.

 Nor can it be contended that the guarantors paid voluntarily because they paid in response to an oral demand rather than a written demand. A written guarantee of payment of the principal's indebtedness, although collateral to the principal indebtedness guaranteed, is yet independent of it, governed by its own terms. *Robey v. Walton Lumber Co.,* 17 Wn.2d 242, 135 P.2d 95, 145 A.L.R. 924 (1943). See *McCallum v. Griffin,* 289 F.2d 135 (5th Cir. 1961). A guarantee like a contract of suretyship may be absolute; *i.e.,* matured at the moment the debt is in default; or conditional; *i.e.,* matured when conditions precedent to liability have been satisfied or excused and the debt is in default. *Amick v. Baugh,* 66 Wn.2d 298, 402 P.2d 342 (1965). The promise of an unconditional guarantor is similar to the promise of a surety. The surety's promise is to do the same thing promised by the principal. The guarantor's promise is to perform if the principal does not. A. Stearns, Law of Suretyship, § 1.5 (5th ed. 1951). If the principal does not perform and the other conditions precedent to liability are satisfied or excused, the promise of the guarantor becomes absolute. There are other respects in which the relationship is not identical, (A. Stearns, Law of Suretyship, § 1.5 (5th ed. 1951); see 38 Am. Jur. 2d *Guaranty* § 14 (1968); *Amick v. Baugh, supra*), but those differences are not here material. The conditions precedent to liability in a guarantee contract are for the benefit of the guarantor; *e.g.,*

a demand for payment, oral or written, upon the principal; a demand, oral or written, upon the guarantor; and the exhaustion of recourse against the principal. However, these conditions may be eliminated in the agreement itself as paragraph (1) of the written guarantee provides; or by subsequent agreement of the guarantor and creditor whose debt is the subject of the guarantee; or waived by the party for whose benefit the condition exists. See A. Stearns, Law of Suretyship, § 6.33 (5th ed. 1951). Accordingly, both McAllister and the bank had a right to treat the oral demand for payment as a sufficient demand even though not in writing. Furthermore, even if the principal had a right to object, it could not both retain the benefit of the $30,000 payment made in reduction of its indebtedness as between itself and the bank and at the same time claim irregularities in the procedure by which the payment was obtained. The doctrine that one cannot retain the benefits of a transaction and at the same time attack the validity of the procedure by which the benefits have been obtained is well settled in cases holding that the doctrines of ratification, waiver or estoppel are applicable; *e.g.*, agents who act in excess of their authority. *Lemcke v. Funk & Co.*, 78 Wash. 460, 139 P. 234 (1914); *Matzger v. Arcade Bldg. & Realty Co.*, 80 Wash. 401, 141 P. 900 (1914). See *Wooley v. Chandler*, 115 Wash. 86, 196 P. 643 (1921); contracts claimed to be ultra vires (*Tootle v. First Nat'l Bank*, 6 Wash. 181, 33 P. 345 (1893)); or corporate action taken in violation of authority or corporate by-law restrictions. *Allen v. Olympia Light & Power Co.*, 13 Wash. 307, 309, 43 P. 55 (1895); *King v. West Coast Grocery Co.*, 72 Wash. 132, 129 P. 1081 (1913); *Puget Sound Pulp & Timber Co. v. Clear Lake Cedar Corp.*, 15 Wn.2d 707, 132 P.2d 363, 143 A.L.R. 1249 (1942), See, generally, 3 Am. Jur. 2d *Agency* § 175 (1964); 19 Am. Jur. 2d *Corporations* § 1255 (1965); 50 Am. Jur. *Suretyship* § 241 (1944). Further, the guarantors following the maturity of the indebtedness and oral demands of the bank were not required to wait until sued before paying or securing a release from liability by mak-

ing such payment in full or on a compromise basis at the risk of being held to have paid voluntarily rather than under the constraint of legal liability. This is the doctrine of analogous principal and surety cases. L. Simpson, Law of Suretyship, § 48 (1950); 72 C.J.S. *Principal and Surety* § 309(b) (1951); 38 Am. Jur. 2d *Guaranty* §§ 12, 14, 15, 17 (1968), and in indemnity cases. *Nelson v. Sponberg*, 51 Wn.2d 371, 376, 318 P.2d 951 (1957). Were we to accept the contention of Pier 67, Inc., we would fly in face of the policy of the law that guarantors should honor their commitments when due rather than when sued.

■ Pier 67, Inc. finally contends that until the loan indebtedness is paid in full, plaintiff has no right to recover judgment for the partial payment made even though the guarantors paid their liability in full and were released from liability by the bank. At oral argument, Pier 67, Inc. conceded that if McAllister's theory of recovery was for reimbursement, as distinguished from subrogation, plaintiff had a right to recover for the payment made without waiting for the indebtedness to be paid in full; but if McAllister was relying upon the theory of subrogation, full payment was required before subrogation would be recognized. But even if subrogation were relied on as plaintiffs' sole theory of recovery, the doctrine that partial payment does not give rise to subrogation is one for the benefit of the still unpaid creditor when the guarantee is still outstanding (see guarantee paragraph (7), *supra*), and cannot be invoked by the debtor. *Sherman v. El Paso Nat'l Bank*, 100 S.W.2d 402 (Tex. Civ. App. 1936). Here, no objection is or can be raised by the bank, the bank having released McAllister by what the bank accepted as a payment in full. The purchaser of the bank's unpaid indebtedness is also in no position to object because there is no relationship of guarantor between itself and McAllister. Furthermore, a contract of suretyship on which liability is unconditional upon default and a guarantee contract which is either originally unconditional or becomes unconditional by waiver of conditions precedent to liability are very similar. A. Stearns, Law of

Suretyship, § 1.5 (5th ed. 1951). See *Yama v. Sigman,* 114 Colo. 323, 165 P.2d 191 (1945); *Amick v. Baugh,* 66 Wn.2d 298, 402 P.2d 342 (1965); 38 Am. Jur. 2d *Guaranty* § 14 (1968). Under a suretyship contract, a partial payment gives rise to an immediate right of reimbursement. L. Simpson, Law of Suretyship, § 48, p. 224 at 231 (1950); H. Arant, Law of Suretyship & Guaranty, § 73, p. 322 at 327 (1931); 50 Am. Jur. *Subrogation* § 28 (1944); Restatement of Security §§ 104-106 (1941); Annot. 9 A.L.R. 1596 at 1608 (1920); 32 A.L.R. 568 at 569 (1924). See 50 Am. Jur. *Suretyship* § 224 (1944) and Restatement of Restitution § 103 (1937).

█ The differences between a suretyship contract and a guarantee contract that exist prior to the removal of the conditions imposing liability for payment are no longer material once the condition is removed. The promise contained in each contract to pay the matured liability then becomes identical. We see no reason to distinguish between the effect of a partial payment on the right to immediate reimbursement in one case and not in the other. It is true that recognizing such a right operates to subject the principal to more than one action to recover upon a single debt, once by the guarantors and again by the creditor, for the remaining balance unpaid. This objection, however, likewise exists in principal and surety cases and yet does not prevent the operation of the doctrine of reimbursement or subrogation on partial payment. The written guarantee was executed by McAllister at Pier 67, Inc.'s request. Having taken the benefits of the guarantee, Pier 67, Inc. can scarcely complain of its burdens.

The judgment is affirmed.

JAMES, C. J., and WILLIAMS, J., concur.