[No. 8531-0-I. Division One. January 25, 1982.]

RODNEY G. PIERCE, *Respondent*, v. ASTORIA FISH FACTORS, INC., ET AL, *Defendants*, BUSINESS FACTORS, INC., *Appellant*.

*Thomas T. Glover* and *Quigley, Hatch, Loveridge & Leslie,* for appellant.

*Gregory J. Parker,* for respondent.

DURHAM, A.C.J.—This is a receiver's action to recover preferences. The creditor disputed the classification of the transfers as preferences and claimed a valid security interest in the debtor's property. From a judgment in favor of the receiver, holding the debt to be unsecured, the creditor appeals.

Appellant Business Factors, Inc. (BFI) is a Washington corporation whose business it is to provide financing by factoring inventory and accounts receivable. Prior to 1975 it had provided such financing for Kirby J. White, a defendant herein, d/b/a Totem Seafoods as a sole proprietorship. On October 24, 1974, White incorporated his operation, forming Totem Seafoods of Washington, Inc. (Totem).

On January 17, 1975, Totem entered into a factoring agreement and a security agreement with BFI. Both documents were signed by "Totem Seafoods Co. of Washington, Inc., By /s/ K. J. White". A printed form entitled "CORPO-

RATE RESOLUTION" appears at the end of the factoring agreement. This document was also signed by K. J. White as president of Totem. The resolution form was completed, except that the space reserved to indicate the date of the meeting of Totem's board of directors was left blank. In fact, the parties agreed before trial that Totem's board of directors never passed a corporate resolution authorizing the pledge of Totem's assets to BFI. White testified that the BFI officers never asked him if a resolution had passed, or if he was authorized by the board to pledge Totem's assets. However, he never represented to BFI that he was not so authorized. The reason for this is suggested by testimony of Guy Hollister, president of BFI:

> Q Did Mr. White at any time during your business relationships with him or with Totem ever indicate to you that he had no authority to act for Totem Seafoods of Washington?
> A Well, no, he was Totem Seafoods as far as we were concerned.

BFI properly filed U.C.C.–1 financing statements covering Totem's inventory, accounts receivable, contract rights, intangibles and proceeds. In March 1976, the parties signed a similar security agreement and filed a financing statement to cover Totem's equipment.

Based on this arrangement, BFI financed Totem's operation. All funds advanced by BFI to Totem were used in, and were essential to, the operation of Totem. Totem became insolvent as of January 24, 1977. An application for receivership was filed on March 24, 1977, and respondent Rodney Pierce was appointed receiver. The parties agreed that the preference period commenced January 24, 1977.

The receiver sued BFI seeking to recover preferences under RCW 23.72.010 *et seq.* BFI admitted receiving certain payments from Totem during the preference period which were applied to Totem's outstanding debt. However, BFI contended that these payments were not preferences due to the security interest in Totem's accounts receivable, inventory, and equipment. After a bench trial, the court

found that the January 17, 1975, pledge of Totem's assets was invalid for lack of a corporate resolution, that BFI's security interests were invalid, and that BFI was a general, unsecured creditor. The court determined the amount of the preference to be $60,284.90 and entered judgment in that amount in favor of the receiver.

BFI first challenges the court's interpretation of RCW 23A.24.010 which reads, in part, as follows:

[T]he mortgage or pledge of any or all property and assets of a corporation whether or not in the usual and regular course of business may be made upon such terms and conditions and for such consideration, . . . *as shall be authorized by its board of directors*; . . .

(Italics ours.) The trial court held that Totem's pledge of corporate assets to BFI, and its security agreement, were not valid because White lacked the authority required by the statute to pledge those assets, as evidenced by the lack of a corporate resolution approving the transaction. BFI insists that the Uniform Commercial Code, RCW Title 62A, article 9, governs the perfection of security interests, and that it fully complied with all article 9 requirements. According to BFI, a receiver recovers a preference for the benefit of all creditors. RCW 23A.24.010 was designed to protect shareholders, not creditors, and has nothing to do with the validity of security interests.

■■ We agree with the trial court's conclusion that the statutory language regarding a corporate resolution is mandatory. This is supported by the principle that, aside from duties as presiding officer at meetings, a corporate president has no more authority, by virtue of that office, than any other director. Additional authority, if any, must be conferred by the charter, bylaws, director resolution, or implied from express powers granted, custom and usage, or the nature of the company's business. *Betz v. Tacoma Drug Co.*, 15 Wn.2d 471, 131 P.2d 183 (1942); *Reuter Organ Co. v. First Methodist Episcopal Church*, 7 Wn.2d 310, 109 P.2d 798 (1941); 19 C.J.S. *Corporations* § 752 (1940). In particular, the president has no power to mortgage or

pledge corporate property, or to borrow money and pledge corporate credit, unless expressly authorized, or unless such authority may be implied from a course of conduct or from powers expressly given. 19 C.J.S. *Corporations* § 1059(c) (1940); 2 W. Fletcher, *Private Corporations* § 612 (perm. rev. ed. 1969); *accord, In re Lee Ready Mix & Supply Co.,* 437 F.2d 497 (6th Cir. 1971) (security agreement made by president held invalid for lack of board authorization).

■ BFI argues that only article 9 governs secured transactions. Article 9 does apply here, but it is not exclusive. The U.C.C. itself states that the principles found in law and equity shall supplement U.C.C. provisions, unless specifically displaced by the statutes. RCW 62A.1–103; 1 P. Coogan & P. Albrecht, *Secured Transactions Under the Uniform Commercial Code* § 5.07[1][b], at 391 (1981). RCW 23A.24.010 therefore adds additional requirements to article 9.

BFI next contends that Totem knowingly accepted the benefit of the secured loan transaction by using the loan proceeds in its normal operation. It thereby ratified the transaction even if White was not authorized to borrow the money, and Totem is now estopped from challenging the validity of the transaction and the security interests.

■ We find BFI's argument persuasive. If a corporation, with knowledge of the facts, accepts the benefit of an unauthorized transaction by one of its officers, or where it received or retains and uses money paid to it by the other party, it thereby ratifies the transaction, or will be estopped to deny ratification. A corporation may not accept the benefit of a transaction and at the same time attempt to escape the consequences thereof on the ground that the transaction was not authorized. 2 W. Fletcher, *Private Corporations* § 773 (perm. rev. ed. 1969). This rule is established law in Washington. *Twisp Mining & Smelting Co. v. Chelan Mining Co.,* 16 Wn.2d 264, 133 P.2d 300 (1943), *cert. denied,* 325 U.S. 837, 89 L. Ed. 1964, 65 S. Ct. 1401 (1945);

*Puget Sound Pulp & Timber Co. v. Clear Lake Cedar Corp.,* 15 Wn.2d 707, 132 P.2d 363, 143 A.L.R. 1249 (1942); *Barnes v. Treece,* 15 Wn. App. 437, 549 P.2d 1152 (1976); *McAllister v. Pier 67, Inc.,* 1 Wn. App. 978, 465 P.2d 678 (1970); *Lockwood v. Wolf Corp.,* 629 F.2d 603 (9th Cir. 1980). It has been applied, for example, in cases of loans made by unauthorized corporate officers,

> the universal rule being that though the officers . . . of a corporation may have no inherent or implied authority to borrow money for the corporation, yet it cannot disavow the unauthorized act of borrowing money in its name as long as it retains the benefits of the transaction.

2 W. Fletcher, *Private Corporations* § 773, at 1132 (perm. rev. ed. 1969); *Belcher v. Webb,* 176 Wash. 446, 29 P.2d 702 (1934); 19 Am. Jur. 2d *Corporations* § 1182 (1965). Such ratification by the corporation will bind not only the corporation, but also its creditors and the trustee in bankruptcy or receiver. *In re Pratt Laundry Co.,* 1 F.2d 982 (D. Conn. 1924); *Belcher v. Webb, supra;* 2 W. Fletcher, *Private Corporations* § 773, at 1139 (perm. rev. ed. 1969).

There can be no doubt that Totem accepted the benefits of the factoring agreement with BFI. Totem's president, Kirby White, testified that Totem received money from BFI, that it was used in Totem's operation, and that the corporation could not operate without it. Nothing in the record indicates the identity of Totem's other officers and directors, if there were any, or what knowledge they possessed regarding the BFI transaction. It is difficult to imagine anyone in Totem's organization being unaware of the financing arrangement since the money from BFI was Totem's very lifeblood. At no time throughout the period did Totem do anything to repudiate or disavow the factoring agreement or the security interests held by BFI. The record supports the finding of an implied ratification. Since the security interests were in all other respects properly perfected, they are, therefore, valid and BFI is a secured

creditor. Funds and property received from Totem after January 24, 1977, were not preferences recoverable by the receiver.

The receiver argues that estoppel cannot be applied because BFI was not justified in relying on White's apparent authority. The trial court found that BFI should have made inquiries as to White's authority, because of BFI's long–standing relationship and familiarity with White and Totem. Yet these are the very factors which would tend to discourage or render meaningless any further inquiry into the president's authority. BFI had dealt with White and his seafood business for years, and Kirby White "was Totem Seafoods as far as we were concerned." Prior conduct of the parties would suggest that if anyone had the authority to pledge Totem's assets, it was White. The trial court's conclusion that BFI should have inquired further was, therefore, incorrect. BFI's reliance on White as Totem's authorized representative was justified.

■ The receiver also contends that estoppel may not be asserted where the promise to be enforced is contrary to public policy or the terms of a statute. *Cooper v. Baer,* 59 Wn.2d 763, 370 P.2d 871 (1962); *State v. Northwest Magnesite Co.,* 28 Wn.2d 1, 182 P.2d 643 (1947). In both of these cases, estoppel was denied because the contracts were illegal and against public policy. Such is not the case here. The transactions sought to be enforced, the factoring agreement and the security interests, were neither illegal nor against public policy. Their only flaw was the lack of a corporate resolution. Such a technical violation of a statutory requirement should not bar enforcement of the agreement where ratification is clearly shown. *Weaver v. General Metals Merger,* 167 Wash. 451, 9 P.2d 778 (1932) (employment contract in violation of statute of frauds enforceable where corporation accepted benefit).

In view of our holding on these issues, we need not address BFI's remaining assignments of error.

The judgment is reversed.

JAMES and CALLOW, JJ., concur.

Reconsideration denied June 9, 1982.

Review denied by Supreme Court September 24, 1982.